**Gordon B. McLENDON, Jr., Individually and as Independent Co–Executor of the Estate of Jeannette Eyster McLendon, Appellant,**

v.

**Anna Gray McLENDON and Jan McLendon Moss, Appellees.**

No. 05–92–00448–CV.

Court of Appeals of Texas, Dallas.

Aug. 17, 1993.

Rehearing Denied Oct. 18, 1993.

Joseph O. Collins, Jr., Scott D. Weber, for appellant.

James L. Truitt, Thomas N. Crowell, James J. Hartnett, Jr., Jay D. Hartnett, John C. Biggers, Kenneth A. Herridge, for appellees.

1. Billie Odom is a long time employee of the McLendon companies and a close personal friend of the family.

Before BAKER, CHAPMAN and ROSENBERG, JJ.

## OPINION

BAKER, Justice.

In this probate case, Anna Gray McLendon Mandel and Jan McLendon Moss challenged the management of the Estate of Jeannette Eyster McLendon by its co-executors, Gordon B. McLendon, Jr. (Bart) and Billie Odom. We modify the trial court's judgment and affirm the judgment as modified.

### THE FAMILY AND THE BUSINESSES

B.R. McLendon and his wife Jeannette had a son, Gordon B. McLendon, Sr. Gordon had a son named Gordon B. McLendon, Jr., who went by the name of Bart. Gordon also had two daughters, named Anna and Jan. B.R. died in 1982, and Jeannette died in 1985. The probate court appointed Bart and Billie Odom [1] as Independent Co-executors of Jeannette's estate.

Gordon, B.R., and since 1969, Bart, built a highly successful enterprise concentrating in the acquisition and operation of radio stations throughout the United States and movie theaters, including "Drive–In" theaters, throughout Texas. The McLendons owned assets throughout the country and in some foreign countries. Gordon, B.R., Bart, and a cadre of trusted and loyal employees ran the closely held businesses.

Over the years, the McLendon holdings became concentrated in two entities, The McLendon Company, a Texas General Partnership, and Tri–State Theaters, a Texas Limited Partnership. Jeannette was a general partner in The McLendon Company and a limited partner in Tri–State. Bart and Gordon were the general partners of Tri–State.

B.R. died in 1982. The Tri–State Limited Partnership Agreement provided it would terminate upon Gordon's death. On May 30, 1985, Gordon and Jeannette amended the

Agreement deleting the provision that it would terminate upon Gordon's death. The McLendon Company Partnership Agreement provided that the surviving partners had the right to continue the partnership with the successor in interest of the deceased partner.

On July 25, 1985, Jeannette died. On July 29, 1985, the probate court appointed Bart and Billie Odom as independent co-executors of her estate. When Jeannette died, Gordon owned a thirty percent interest in Tri–State as a general partner, and Bart owned a ten percent interest as a general partner. The limited partners of Tri–State were the Estate of B.R., owning thirty percent interest, and Jeannette, also owning thirty percent interest. When Jeannette died, she owned twenty-five and one-half percent general partnership interest in The McLendon Company. Anna and Jan each inherited twenty percent of Jeannette's estate.

On August 23, 1985, the partners amended the partnership agreements of both The McLendon Company and Tri–State Theaters. Gordon and Bart, as general partners of both partnerships, Bart and Billie, as co-executors of Jeannette's estate, and Dorothy Manning, as executrix of B.R.'s estate, signed the amendments. The partnership amendments are central to the controversy between Bart and Anna and Jan.

## PARTNERSHIP AMENDMENTS

The McLendon Company Partnership Amendment provides:

> Should any partner contest by legal action, judicial proceeding or otherwise any management decision or action made or taken by the managing partner [Bart] in his role as sole and exclusive manager of the partnership business, then the managing partner may, by written notice to such partner (the "Expulsion Notice"), expel such partner from the partnership, such expulsion and the termination of such partner's status as a partner in the partnership being effective as of the date of the Expulsion Notice. No such expulsion shall cause a dissolution and termination of the Partnership and, upon any such event, no one shall

have the right to compel the termination and liquidation of the Partnership.

> Upon expulsion, the expelled partner receives an amount equal to the book value of his or her partnership interest, payable by a ten-year installment note. The Tri–State Theatre amendment is similar to The McLendon Company amendment.

## PROCEDURAL HISTORY

Anna[2] sued Bart and Billie challenging their management of Jeannette's estate. Anna also contested the validity of the amendments to the two partnership agreements. Bart and Billie notified Anna that she had forfeited her interest in Jeannette's estate. Bart and Billie filed a counterclaim seeking a ruling that Anna and Jan's lawsuit represented conduct contemplated by the *in terrorem* clause of Jeannette's will. The *in terrorem* clause reads:

> In the event any individual contests this Will or otherwise attempts to attach, modify or impair the validity of the provisions hereof, I direct that if such individual be a beneficiary hereunder, his or her sole inheritance from my estate shall be One Dollar ($1.00).

Anna and Jan asserted causes of action against Bart and Billie for: (1) breach of fiduciary duty; (2) removal of the Co–Executors; (3) fraud; (4) tortious interference with inheritance rights; (5) intentional infliction of emotional distress; (6) punitive damages; (7) attorneys' fees; and (8) an accounting and distribution. Anna and Jan also sought declaratory judgment that the partnership amendments were invalid based on a breach of fiduciary duty and void as against public policy. They sought a ruling that Gordon was incompetent and subject to undue influence by Bart at the time of the execution of the amendments. They sought a ruling that The McLendon Company terminated upon Jeannette's death and the *in terrorem* clause in Jeannette's will was invalid or did not apply to appellees' claims.

The jury found that Bart and Billie breached their fiduciary duties to the estate. The jury awarded actual damages of $100,000 for

2. Jan intervened and is an appellee in this appeal.

Anna and Jan against Bart. The jury awarded punitive damages of $100,000 for Anna and Jan against Bart. The jury awarded Anna $700,000 and Jan $358,000 as reasonable and necessary attorneys' fees. The trial court entered judgment on the verdict for Anna and Jan. The trial court, based on the Declaratory Judgments Act, awarded Anna and Jan their attorneys' fees. However, the trial court did not enter judgment for Anna and Jan that the *in terrorem* clause in Jeannette's will did not apply to their suit against Bart.

In eight points of error, Bart asserts the trial court erred in awarding actual damages, exemplary damages, and attorneys' fees. Bart further complains this Court erred in granting Anna's motion for extension of time to perfect her appeal.

In six cross-points of error, Anna and Jan complain the trial court erred by: (1) refusing to hold the partnership amendments invalid; (2) refusing to submit a jury question on whether the co-executors acted fairly by executing the amendments; (3) refusing to remove the co-executors on appellees' request and because the jury's answer was against the great weight and preponderance of evidence; (4) failing to submit a jury question on the co-executors' legal incapacity; and (5) failing to declare the *in terrorem* clause did not apply.

## MOTION FOR EXTENSION

In point of error eight, Bart asserts this Court erred in granting Anna's[3] motion for extension of time to file the cost bond. Bart claims our order allows her to appeal as to Billie Odom without showing good cause. Anna and Jan argue that: (1) Bart did not appropriately raise the point in his brief; (2) Bart waived the point; (3) this Court's order is not erroneous; and (4) the point is moot.

### A. Applicable Law

Where a party files a timely motion for new trial, an appellant perfects an appeal by filing a cost bond or substitute within ninety days of the date on which the trial court signed the final judgment. Tex.R.App.P.

---

[3]. Anna's and Jan's appeals have since been consolidated.

41(a)(1). This Court may extend the appellate timetable under certain circumstances. Rule 41(a)(2) of the Texas Rules of Appellate Procedure provides:

> An extension of time may be granted by the appellate court for late filing of a cost bond or notice of appeal or making the deposit required by paragraph (a)(1) or for filing the affidavit, if such bond or notice of appeal is filed, deposit is made, or affidavit is filed not later than fifteen days after the last day allowed and, within the same period, a motion is filed in the appellate court *reasonably explaining the need for such extension.* If a contest to an affidavit in lieu of bond is sustained, the time for filing the bond is extended until ten days after the contest is sustained unless the trial court finds and recites that the affidavit is not filed in good faith.

Tex.R.App.P. 41(a)(2) (emphasis added).

■ The issue is what is a "reasonable explanation?" The Texas Supreme Court defines "reasonably explaining" to mean "any plausible statement of circumstances indicating that failure to file within the [required] period was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." *See Garcia v. Kastner Farms, Inc.*, 774 S.W.2d 668, 669 (Tex.1989) (quoting *Meshwert v. Meshwert*, 549 S.W.2d 383, 384 (Tex.1977)). Any conduct short of deliberate or intentional noncompliance qualifies as inadvertence, mistake or mischance even if that conduct is professional negligence. *Garcia*, 774 S.W.2d at 670.

■ Our ruling on the motion before submission on the merits is an interlocutory order. *Smith v. Free*, 130 Tex. 23, 107 S.W.2d 588, 589–90 (1937); *Taylor v. Trans–Continental Properties, Ltd.*, 739 S.W.2d 873, 874 (Tex.App.—Tyler 1987, no writ). As such, the complaining party can incorporate the ruling on the motion in a motion for rehearing filed in this Court or assign it as error in the appellate brief. Failure to do either waives the error, if any. *See Smith*, 107 S.W.2d at 590; *see also Taylor*, 739 S.W.2d at 874.

## B. Application of Law to Facts

Bart, as one of the independent co-executors of Jeannette's estate, perfected an appeal to this Court for the estate. Odom was not a party to the appeal. Anna planned to seek relief against Billie Odom. Anna perfected her appeal and filed the motion to extend within the fifteen-day grace period allowed by rule 41(a)(2). Odom opposed the motion. This Court granted the motion.

Bart did not limit his appeal. Therefore, Anna can bring cross-points against Bart. *See Donwerth v. Preston II Chrysler–Dodge,* 775 S.W.2d 634, 639 (Tex.1989). Anna also wanted to bring cross-points against the co-executor, Odom. Anna filed a bond and a motion to extend time to file the cost bond. She did so to avoid a jurisdictional fight later and because of uncertainty of the necessity of a separate appeal against Odom, the co-executor of the estate.

We find that Bart did not waive his complaint by not filing a motion for rehearing. *See, e.g., Smith,* 107 S.W.2d at 590; *Taylor,* 739 S.W.2d at 874. The ruling on the motion is properly before this Court on assignment of error. We find Anna's late filing was not intentional or deliberate but due to uncertainty of law. We hold that confusion about applicable law is a reasonable explanation. *See Garcia,* 774 S.W.2d at 670.

We reaffirm our prior ruling. We overrule Bart's point of error eight.

### ANNA AND JAN'S CLAIMS FOR DAMAGES

In points of error one and two, Bart contends there is no evidence or insufficient evidence that the value of Anna and Jan's interests in the estate decreased because of any acts or conduct on his part. In his third point of error, Bart contends that because there is no evidence or insufficient evidence to support the actual damages, the court erred in awarding exemplary damages. In his fourth and fifth points of error, Bart contends there is no evidence or insufficient evidence that he acted willfully, wantonly, or without just cause or excuse to support an award of exemplary damages.

## A. Standards of Review

### 1. No Evidence

No evidence points are questions of law. *Tomlinson v. Jones,* 677 S.W.2d 490, 492 (Tex.1984). In reviewing a no evidence point, we consider only the evidence and inferences that support the jury's findings. We disregard all evidence and inferences that do not support the jury's findings. *First Baptist Church v. Bexar County,* 833 S.W.2d 108, 111 (Tex.1992). We sustain a no evidence point only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the rules of law or evidence bar consideration of the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991).

### 2. Sufficiency of the Evidence

In reviewing an insufficient evidence point, we view all the evidence in the record, including any evidence contrary to the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only if the evidence standing alone is too weak to support the jury's findings or if the jury's answers are so against the overwhelming weight of the evidence that they are manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The jury is the trier of fact and decides the fact issues by a preponderance of the evidence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). We do not pass upon the credibility of the witnesses. We do not substitute our judgment for that of the fact finder, even if there is conflicting evidence that supports a different judgment. *Harco Nat'l Ins. Co. v. Villanueva,* 765 S.W.2d 809, 810 (Tex.App.—Dallas 1988, writ denied). When an appellant raises both no evidence and insufficient evidence points of error, we rule on the no evidence point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981) (per curiam).

## B. Breach of Fiduciary Duty

The fiduciary standards of an executor of an estate are the same as the fiduciary standards of a trustee. *Humane Society, etc. v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex.1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). As trustee of the estate's property, the executor is subject to high fiduciary standards. *Humane Society, etc.*, 531 S.W.2d at 577. As a fiduciary, an executor has a duty to protect the beneficiaries' interest by fair dealing in good faith with fidelity and integrity. *See Geeslin v. McElhenney*, 788 S.W.2d 683, 685 (Tex.App.—Austin 1990, no writ). His personal interests may not conflict with his fiduciary obligations to the estate. *See Humane Society, etc.*, 531 S.W.2d at 577.

## C. Application of Law to Facts

### 1. No Evidence

Jeannette's estate is a limited partner in Tri–State Theaters and a general partner in The McLendon Company. The parties amended the partnership agreements of both The McLendon Company and Tri–State Theaters in August 1985, one month after Jeannette's death. Bart adopted the amendments to both partnership agreements in his capacity as general partner in both partnerships. Bart and Billie adopted the amendments to the partnership agreements as co-executors of Jeannette's estate.

Anna and Jan presented expert evidence by a valuation expert. The expert testified about the value of both partnerships before the enacted amendments and afterward. The expert testified that on Jeannette's death the dissolution value of Jeannette's interest in The McLendon Company was $6.4 million. Both Anna and Jan would receive twenty percent or $1.3 million each. If Tri–State Theaters had dissolved on Jeannette's death, the dissolution value of Jeannette's interest would have been $3.4 million. Both Anna and Jan would receive twenty percent or $680,000 each.

The expert said the amendments had a detrimental effect on Anna and Jan's interests. After the amendments, the partnership interest would have no value to third-party buyers. Any investment in the partnerships would be restrictive—lifetime in nature. There would be no adequate yield over any holding period to justify that type of an investment. The expert concluded that the amendments made Anna and Jan's interests worthless.

Anna and Jan presented evidence from a fiduciary law expert that the amendments removed the ability of any partner to terminate the partnership. The expert testified that this amounted to a removal of rights of partners.

From the evidence presented, the jury could have determined that Bart breached his fiduciary duty as co-executor of Jeannette's estate by signing the amendments to the partnership agreements. We conclude there is some evidence to support the jury's finding Bart breached his fiduciary duty to the estate.

### 2. Insufficient Evidence

We now review all the evidence, including that which is contrary to the verdict. Bart presented expert testimony about the value of the partnerships. The expert determined the value of the partnerships before and after the enactment of the amendments. The expert testified that before the enactment of the amendments, the estate had an assignee interest in the partnership. He testified that an assignee interest has fewer rights and privileges than a partnership interest and is not as valuable. He further testified the amendments elevated the assignee interest in the partnerships to that of a partnership interest. The expert concluded the value of Jeannette's estate interest in the partnerships increased after the execution of the amendments.

Bart testified he is the managing partner of The McLendon Company and the managing general partner of Tri–State. He signed the amendments in his capacity as co-independent executor of Jeannette's estate, giving him sole management power in both partnerships. The amendments benefitted the estate because a partnership interest is more valuable than an assignee interest.

A dispute existed about whether the enactment of the partnership amendments benefitted the estate. We do not substitute our judgment for that of the jury. Although we consider all of the relevant evidence, we are not a fact finder and cannot pass upon the credibility of the witnesses—even if there is conflicting evidence that supports a different conclusion. *See Harco Nat'l Ins. Co.,* 765 S.W.2d at 810. The evidence is sufficient to support the jury finding. We overrule Bart's first and second points of error.

### D. Exemplary Damages

■ The trial court may award exemplary damages only if the claimant proves that the personal injury, property damage, death, or other harm about which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) *malice;* or (3) gross negligence. TEX.CIV.PRAC. & REM.CODE ANN. § 41.003 (Vernon Supp.1993)[4] (emphasis added). The imposition of exemplary damages requires a finding of fraud, *malice,* or gross negligence. *Villarreal v. Elizondo,* 831 S.W.2d 474, 478 (Tex.App.—Corpus Christi 1992, no writ) (emphasis added).

The trial court instructed the jury that the jury may award exemplary damages where a person acted with malice and wanton disregard of the rights of another. The trial court instructed the jury that malice includes:

> ill will or bad or evil motive or such gross indifference of the rights of another as will amount to a willful or wanton act done intentionally and without just cause or excuse. . . .

The trial court further instructed the jury to consider the following factors in making a determination of the amount:

(1) The nature of the wrong;

(2) The character of the conduct involved;

(3) The degree of culpability of the wrongdoer;

(4) The situation and sensibilities of the parties concerned; and

(5) The extent to which such conduct offends a public sense of justice and propriety.

### E. Application of Law to Facts

■ Bart's third point of error complains that because there is no evidence or insufficient evidence to support an award of actual damages, the trial court erred in awarding exemplary damages. Because we overruled points of error one and two, we necessarily overrule point of error three. Bart's fourth and fifth points of error complain there is no evidence or insufficient evidence that Bart acted willfully, wantonly, or without just cause or excuse to support an award of exemplary damages.

We first review the evidence that tends to support the jury finding. Bart's attitude about his fiduciary obligations to Anna and Jan was that in managing the partnerships representing the bulk of the value of Jeannette's estate, anything that was not criminal was permissible. His fiduciary obligation in managing the partnerships authorized him to do anything not criminal including lending all of the partnerships' assets to himself or swapping the partnerships' assets for a yacht.

There is evidence that Bart intentionally withheld partnership investment reports from Anna and Jan without just cause. When Jan asked about an investment report circulated by Bart, Bart responded by claiming no obligation to provide further information or documentation. Bart's response letter states: "In reference to the issuance of further documentation, there will be none."

Bart responded to Anna's lawsuit by invoking the forfeiture clause in both a McLendon family trust of which Bart was trustee and in Jeannette's Will. Bart paid himself about $673,000 from the partnerships over a four-year period. Anna and Jan received no distribution during that same period. Bart also authorized the payment of $1.25 million to Odom over a five-year period. Bart testified that the partnerships paid some of his personal expenses without reimbursement. Additionally, Bart took money from the partnerships to pay for renovations of Cielo, a ranch and nonpartnership property.

---

**4.** Bart cites *Nabours v. Longview Sav. & Loan Assoc.,* 700 S.W.2d 901 (Tex.1985), which was decided before the enactment of section 41.003. We find it inapplicable.

From this evidence and testimony, the jury could have determined that Bart's actions were taken with malice and wanton disregard for Anna and Jan's rights. We conclude there is some evidence to support the jury's finding of exemplary damages.

We now review all the evidence, including that which is contrary to the verdict. Bart testified he did not make decisions that were not based on good business judgment though he had complete control over the partnerships after the enactment of the amendments. Bart further testified that although he had the power to do anything not illegal, he made decisions based on good business judgment. Bart testified that his reason for failing to make a timely distribution was actually beneficial to the estate in that it increased the beneficiaries' eventual share. Bart concluded that because all his actions regarding the management of the estate were at his attorney's advice, the actions were not malicious.

There is a factual dispute about Bart's management of the estate and its consequences. The jury is the fact finder and decides the fact issues by preponderance of the evidence. *Cain*, 709 S.W.2d at 176. We do not decide credibility issues—even if conflicting evidence supports a different conclusion. *See Harco Nat'l Ins. Co.*, 765 S.W.2d at 810. We find the evidence sufficient to support the jury finding of exemplary damages. We overrule Bart's points of error four and five.

## ATTORNEYS' FEES

In point of error six, Bart contends the trial court erred in awarding Anna and Jan attorneys' fees under the Declaratory Judgments Act. He claims because they were unsuccessful in obtaining declaratory relief, they may not recover their attorneys' fees. In point of error seven, Bart contends the trial court erred in awarding attorneys' fees because Anna and Jan did not segregate their attorneys' fees.

### A. Uniform Declaratory Judgments Act

The Texas Uniform Declaratory Judgments Act provides that the trial court may award reasonable and necessary attorney's fees as are equitable and just. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). The decision to grant or deny attorney's fees is within the trial court's sound discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985); *Trinity Universal v. Fidelity & Cas. Co.*, 837 S.W.2d 202, 205 (Tex.App.—Dallas 1992, no writ).

Our Court has held the trial court may award attorney's fees to a nonprevailing party. *Hartford Cas. Ins. v. Budget Rent-A-Car*, 796 S.W.2d 763, 771 (Tex.App.—Dallas 1990, writ denied); *District Judges of Collin County v. Commissioners Court of Collin County*, 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).[5]

The courts have broadly construed the trial court's discretion to award attorney's fees in a declaratory judgment action. We do not reverse the trial court's decision on appeal unless the complaining party shows a clear abuse of discretion. *Trinity Universal*, 837 S.W.2d at 205; *Oake*, 692 S.W.2d at 455.

### B. Application of Law to Facts

Anna and Jan asked the trial court to declare the partnership amendments invalid based on a breach of fiduciary duty and void as against public policy. Anna and Jan asked the court to declare the amendments invalid because Gordon was incompetent and subject to undue influence by Bart at the time of the execution of the amendments. Anna and Jan asked the court to declare that The McLendon Company terminated upon Jeannette's death. Finally, Anna and Jan asked the court to declare the *in terrorem* clause in Jeannette's will invalid or that it did not apply to their causes of action. The trial court denied the declaratory relief sought by Anna and Jan.

5. We note that in *La Cour Du Roi, Inc. v. Montgomery County*, 698 S.W.2d 178 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.), and its progeny, the trial courts have refused to award attorneys' fees to nonprevailing parties under the Declaratory Judgment Act. However, we decline to follow that line of cases.

Anna and Jan also pleaded for attorneys' fees. Based on the Declaratory Judgments Act, the court awarded Anna $700,000 in attorneys' fees and Jan $358,000 in attorneys' fees. A trial court can award attorneys' fees to a nonprevailing party. *Hartford Cas. Ins.*, 796 S.W.2d at 771; *District Judges of Collin County*, 677 S.W.2d at 746.

We find no abuse of discretion by the trial court in awarding Anna and Jan attorneys' fees. We overrule Bart's point of error six.

### D. Segregation of Attorneys' Fees

Generally, the party seeking attorneys' fees has the duty to segregate the attorneys' fees incurred for the claims where attorneys' fees are recoverable from those where attorneys' fees are not recoverable. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex.1991); *Flint & Assoc. v. Intercon. Pipe & Steel*, 739 S.W.2d 622, 624 (Tex.App.—Dallas 1987, writ denied).

An exception to the duty to segregate arises when the attorney's fees incurred involve claims arising out of the same transaction and their interrelation is such that their prosecution or defense entails proof or denial of essentially the same facts. *Stewart Title Guar. Co.*, 822 S.W.2d at 11. Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims. *Stewart Title Guar. Co.*, 822 S.W.2d at 11 (quoting *Gill Sav. Ass'n v. Chair King, Inc.*, 783 S.W.2d 674, 680 (Tex.App.—Houston [14th Dist.] 1989), *modified*, 797 S.W.2d 31 (Tex.1990)); *Flint & Assoc.*, 739 S.W.2d at 624–25.

### D. The Parties' Contentions

#### 1. Bart's Contentions

Bart contends that if Anna and Jan may recover attorneys' fees, their failure to properly segregate the attorneys' fees among the various causes of action prevent their recovery.

#### 2. Anna and Jan's Contentions

Anna and Jan acknowledge the general rule that a party seeking attorney's fees is required to show by segregation of fees that the requested fees were incurred on a claim that allows recovery of such attorneys' fees. Anna and Jan argue that their claims fall within the exception to the general rule. Anna and Jan argue that here they could not segregate by each cause of action because their causes arose from the same facts and circumstances. Anna and Jan conclude that under these circumstances it was not necessary to segregate the attorneys' fees.

### E. Application of Law to Facts

Anna and Jan presented evidence of attorneys' fees from several witnesses. One witness testified it was not possible to segregate and allocate fees between the various theories of recovery. Another witness testified that the theories "were all wrapped up so tightly together that it would have been virtually impossible to split the hours and allocate them to each legal theory."

Anna and Jan sued Bart and Billie for: (1) breach of fiduciary duty; (2) removal of them as co-executors; (3) intentional infliction of emotional distress; (6) damages; and (7) an accounting and distribution. Anna and Jan sought declaratory judgment that: (1) the partnership amendments were invalid based on a breach of fiduciary duty, void as against public policy, and void because Gordon was incompetent and subject to undue influence by Bart at the time of the execution of the amendments; (2) The McLendon Company terminated upon Jeannette's death; and (3) the *in terrorem* clause in Jeannette's will was invalid or did not apply to their causes of action.

In his brief, Bart points out that Anna and Jan spent a majority of the time at trial trying to prove that Gordon lacked the mental capacity to execute the partnership amendments. Evidence of Gordon's mental capacity and Bart's later influence on him relates directly to Bart's fiduciary duty to Anna and Jan and their claims against him.

Anna and Jan's action against Bart and Billie Odom for breach of fiduciary duty re-

lates directly to the declaratory judgment that the partnership amendments were invalid based on that same breach of fiduciary duty. Additionally, Anna and Jan's claims of tortious interference with inheritance rights and intentional infliction of emotional distress relate directly to Bart's invocation of the *in terrorem clause* of Jeannette's will and the declaratory relief that Anna and Jan sought.

After reviewing the record, we determine that the facts here meet the test of the exception to the general rule about segregation of attorneys' fees. *See Stewart Title Guar. Co.*, 822 S.W.2d at 11. We hold the trial court did not abuse its discretion by not requiring segregation of attorneys' fees. We overrule Bart's point of error seven.

### CROSS–POINTS

In six cross-points of error, Anna and Jan complain the trial court erred by refusing to hold the partnership amendments invalid, refusing to submit requested jury questions about whether Bart and Odom acted fairly and whether Bart and Odom had become legally incapacitated, and refusing to remove Bart and Odom as co-executors. Anna and Jan also complain the trial court erred by failing to declare that the *in terrorem* clause in Jeannette's will did not apply to any of the claims they assert against Bart.

### REQUESTED JURY QUESTIONS

In cross-point two, Anna and Jan complain the trial court erred in refusing to submit a jury question asking whether co-executors Bart and Billie acted fairly in executing the amendments. In cross-point five, Anna and Jan complain the trial court erred because it did not submit a jury question on whether Bart and Odom became legally incapacitated from performing their duties as independent co-executors.

#### A. Applicable Law

■ Rule 276 of the Texas Rules of Civil Procedure provides that when a party requests a question and the trial court refuses it, the judge shall endorse on the question "Refused" *and sign it officially.* Tex. R.Civ.P. 276 (emphasis added). When the record does not reflect that this is done, no

error is shown though the question may appear in the transcript. *City of Terrell v. McFarland,* 766 S.W.2d 809, 812 (Tex.App.—Dallas 1988, writ denied); *see also* Tex. R.Civ.P. 276. Without a showing of an adverse ruling, a party preserves nothing for review. Tex.R.App.P. 52(a); *E.V.R. II Assocs., Ltd. v. Brundige,* 813 S.W.2d 552, 555 (Tex.App.—Dallas 1991, no writ).

#### B. Discussion

■ In cross-point of error two, Anna and Jan complain the trial court erred in refusing a requested jury question on whether the co-executors, Bart and Billie, acted fairly. Anna and Jan filed the question with their requested jury instructions and questions. The record does not show that they got a ruling on their request by obtaining the trial judge's endorsement of "Refused" and his signature. When the record does not reflect that this is done, no error is shown. Tex.R.Civ.P. 276; *City of Terrell,* 766 S.W.2d at 812. Without a showing of an adverse ruling, Anna and Jan preserved nothing for review. Tex.R.App.P. 52(a); *E.V.R. II Assocs.,* 813 S.W.2d at 555. We overrule Anna and Jan's second cross-point.

■ In cross-point of error five, Anna and Jan complain the trial court erred by refusing to submit a question on legal incapacity of Bart and Billie. Anna and Jan filed the question with their requested jury instructions and questions. The copy in the record has the word "denied" written across the bottom. However, the record does not show the judge refused the question and signed it. No error is shown. Tex.R.Civ.P. 276; *City of Terrell,* 766 S.W.2d at 812. We overrule Anna and Jan's fifth cross-point.

### CROSS–POINTS ONE, THREE, FOUR, AND SIX

### STANDARDS OF REVIEW

#### A. Conclusions of Law

■ We review challenges to the trial court's conclusions of law as a matter of law, not on sufficiency of the evidence grounds. *Mercer v. Bludworth,* 715 S.W.2d 693, 697

(Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). An erroneous conclusion of law is not binding on this Court. *Bantuelle v. Williams,* 667 S.W.2d 810, 818 (Tex.App.—Dallas 1983, writ ref'd n.r.e.) (per curiam). When a party attacks conclusions of law on appeal, we have the power and the duty independently to evaluate those conclusions. *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied). A trial court's application of law to facts is accorded limited deference. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992, orig. proceeding). A failure of the trial court to analyze or apply the law correctly is an abuse of discretion. *Walker,* 827 S.W.2d at 840.

## B. Great Weight and Preponderance

In reviewing a challenge that the jury finding is against the great weight and preponderance of the evidence, we examine the record to determine if there is some evidence to support the finding. We set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). The jury is the trier of fact and decides the fact issues by a preponderance of the evidence. *Cain,* 709 S.W.2d at 176. We cannot pass upon the credibility of the witnesses and substitute our judgment for that of the trier of fact, even if there is conflicting evidence that supports a different conclusion. *Harco Nat'l Ins. Co. v. Villanueva,* 765 S.W.2d 809, 810 (Tex.App.—Dallas 1988, writ denied).

To reverse on insufficiency grounds, we must set forth the relevant evidence in detail. We must clearly state why the jury's findings are factually insufficient or so against the great weight and preponderance as to be manifestly unjust; why they shock the conscience; or why they clearly show bias. We must state how the contrary evidence greatly outweighs the evidence supporting the verdict. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

## PARTNERSHIP AMENDMENTS

In cross-point one, Anna and Jan assert the trial court erred in holding that the amendments to the partnership agreements were not invalid.

### A. The "Disputes Provisions"

The amendments to both The McLendon Company and Tri-State Theaters are similar and contain a "Disputes Concerning Management" provision that provides:

> Should any partner contest by legal action, judicial proceeding or otherwise any management decision or action made or taken by the managing partner [Bart] in his role as sole and exclusive manager of the partnership, then the managing partner [Bart] may, by written notice to such partner (the "Expulsion Notice"), expel such partner from the partnership, such expulsion and the termination of such partner's status as a partner in the partnership being effective as of the date of the Expulsion Notice. No such expulsion shall cause a dissolution and termination of the Partnership and, upon any such event, no one shall have the right to compel the termination and liquidation of the Partnership.

> Upon the happening of any such expulsion, any Partner so expelled ("Expelled Partner") (a) shall immediately lose all interest in any present or future Partnership profits or income and any interest in the value of the business, good will, patents, trademarks or any other intangible assets of the Partnership and (b) shall only be entitled to receive as compensation for such an amount equal to the existing book balance, as of the date of the Expulsion Notice, of the income account and capital account of the Expelled Interest, less any sums then owing by such Expelled Partner to the Partnership, such payment to be made and evidenced by a promissory note, executed by the Partnership, dated effective as of the date of the Expulsion Notice, bearing interest at an annual rate of ten percent (10%), allowing for total and/or partial prepayment at any time or from time to time, and being payable in ten (10) equal installments of principal, plus all unpaid interest accrued as of the date of each such payment, with each such payment being due and payable on each anniversary date of such Promissory Note. Any such expelled

Partner shall also be discharged from and/or indemnified and held harmless by the Partnership from and against any further liability for Partnership liabilities. The Expelled Interest shall be allocated, pro rata, among the remaining Partners.

### B. The Parties' Contentions

#### 1. Anna and Jan

Anna and Jan contend the trial court erred in holding that the challenged amendments to the partnership agreements were not invalid. Anna and Jan further contend the enforcement of the amendments exempts Bart from all fiduciary responsibility as managing partner of The McLendon Company and as general partner of Tri–State Theaters. They conclude the amendments are void and invalid on the grounds of illegality or public policy or voidable because they are a clear act of self-dealing by the co-executors.

#### 2. Bart

Bart argues that the trial court correctly held the amendments were valid. Bart argues Anna and Jan lack standing to question the validity of the partnership amendments because neither Anna nor Jan was a party to the agreement. Bart also argues that Anna and Jan cannot complain of the validity of the agreement without joining the other partners. Bart argues that Anna and Jan did not get a finding that the execution of the amendments was a breach of fiduciary duty or constituted self-dealing. Bart also argues that contrary to Anna and Jan's contentions, the amendments do not violate public policy. Bart concludes that if this Court finds the amendments improper, reformation striking the offending provision is the proper remedy.

### A. Applicable Law

The partnership agreement governs the parties' rights. Only where it is silent do the provisions of the Texas Uniform Partnership Act come into play. *See Hoagland v. Finholt,* 773 S.W.2d 740, 742–43 n. 4 (Tex.

App.—Dallas 1989, no writ); *Dobson v. Dobson,* 594 S.W.2d 177, 180 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). The Texas Uniform Partnership Act applies to limited partnerships in any case not provided for by the Texas Revised Limited Partnership Act or agreement of the parties. *See* TEX.REV.CIV.STAT.ANN. art. 6132a–1 (Vernon Supp.1993).[6]

A managing partner in a general partnership owes his co-partners the highest fiduciary duty recognized by law. *Huffington v. Upchurch,* 532 S.W.2d 576, 579 (Tex. 1976); *Crenshaw v. Swenson,* 611 S.W.2d 886, 890 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.). In a limited partnership, the general partner acting in complete control stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of a trust. *Crenshaw,* 611 S.W.2d at 890.

A managing partner has a duty to administer the partnership affairs solely for the benefit of the partnership. A managing partner may not place himself in a position where it benefits him to violate this duty. *See Crenshaw,* 611 S.W.2d at 890.

A fiduciary [managing partner] may contract with his beneficiaries [co-partners/limited partners] while both parties are competent and reasonably knowledgeable about the contract's subject matter. *Grider v. Boston Co., Inc.,* 773 S.W.2d 338, 343 (Tex.App.—Dallas 1989, writ denied). Public policy precludes a fiduciary from limiting his liability for (1) self-dealing; (2) bad faith; (3) intentional adverse acts; and (4) reckless indifference about the beneficiary and his best interest. *Grider,* 773 S.W.2d at 343.

### B. Discussion

After Jeannette's death, the partners amended the partnership agreements of both The McLendon Company and Tri–State Theaters. Gordon and Bart, as general partners of both partnerships, Bart and Billie, as co-executors of Jeannette's estate, and Dorothy Manning, as executrix of B.R.'s estate, signed

---

**6.** After August 1992, this Act applies to all domestic limited partnerships and all foreign limited partnerships transacting business in Texas. TEX.REV.CIV.STAT.ANN. art. 6132a–1 § 13.02(b) (Vernon Supp.1993).

the amendments. The trial court found that the amendments to The McLendon Company and Tri–State Theaters were not invalid.

▮ Anna and Jan do not complain that the amendments to the partnership agreements violate the partnership agreements. Anna and Jan assert a claim of breach of fiduciary duty. Therefore, Bart's argument that Anna and Jan have no standing and should have joined the other partners as parties is irrelevant to Anna and Jan's contentions. The only question is the propriety of the trial court's construction of the amendments. The proper construction of an unambiguous agreement is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

▮ We construe the language of the disputes provision to discourage legal action contesting any management decision or action taken by Bart *in his role as sole and exclusive manager of the partnership.* Any partner wishing to contest management decisions by legal action runs the risk of expulsion from the partnership.

The amendments do not prevent Anna and Jan from instituting legal action against Bart as *co-executor* of Jeannette's estate for breach of any fiduciary duty owed to the beneficiaries. The amendments do not prevent Anna and Jan from suing Bart for breach of his duties in any other fiduciary capacity.

The disputes provision provides for the allocation, pro rata, of any expelled partner's interest among the remaining partners. The amendments do not allow any one partner [Bart] to increase his interest to the detriment of the remaining partners. We do not construe the amendments to authorize self-dealing by Bart in violation of the public policies of the State of Texas.

We overrule Anna and Jan's first cross-point.

## REMOVAL OF BART AND BILLIE AS INDEPENDENT CO–EXECUTORS

In cross-point three, Anna and Jan contend the trial court erred in denying their request to remove Bart and Billie as independent co-executors. In cross-point four, they contend that the jury's answer to question 3 was against the great weight and preponderance of the evidence.

### A. Removal of Independent Co–Executors

▮ The Probate Court may remove an independent executor if he is found guilty of gross misconduct or gross mismanagement in the performance of his duties. TEX.PROB. CODE ANN. art. 149C (Vernon Supp.1993). "Gross misconduct" and "gross mismanagement" include *at a minimum:* (1) any *willful* omission to perform a legal duty; (2) any *intentional* commission of a wrongful act; and (3) any breach of a *fiduciary* duty that results in actual harm to a beneficiary's interests. *Geeslin v. McElhenney,* 788 S.W.2d at 685.

### B. Application of Law to Facts

▮ In question No. 3, the jury found that Bart and Billie Odom were not guilty of gross misconduct or gross mismanagement in the performance of their duties as independent co-executors of Jeannette's estate. The trial court instructed the jury that "gross misconduct" or "gross mismanagement" includes at a minimum:

(1) any willful omission to perform a legal duty;

(2) any intentional commission of a wrongful act;

(3) a breach of a fiduciary duty that results in actual harm to a beneficiary's interest.

The jury answered "No" to the question on both Bart and Billie Odom.

The jury found that Bart and Billie breached a fiduciary duty. The jury found $100,000 as actual damages against Bart but no actual damages against Billie.

The jury heard evidence of Bart and Billie's actions. The partnerships paid Billie an annual salary of $250,000 as well as compensation for disclaiming her interest in Gordon B. McLendon's estate. The partnerships paid Bart an annual salary of $200,000. Bart received an additional $673,000 compensation

between September 14, 1986, and December 31, 1990, business trips to Europe, a club membership, and use of the Texas Stadium suite. Bart also paid for some personal expenses out of partnership funds.

Both Bart and Billie borrowed money from the partnerships, which they repaid with interest. Additionally, both Bart and Billie executed the partnership agreements, Bart in the dual capacity as partner and co-executor of Jeannette's estate and Billie as co-executor of Jeannette's estate.

The jury heard evidence of the value of the partnerships. Bart contends the amendments increased the value of the estate's interest in the partnerships. Anna and Jan's experts testified that the amendments constituted self-dealing and harmed Jeannette's estate by reducing its rights in the partnership. Anna and Jan's experts also said that the amendments reduced the value of Anna and Jan's partnership interests.

The jury determined that neither Bart nor Billie was guilty of gross misconduct or gross mismanagement in the performance of their duties as independent co-executors. We do not substitute our judgment for that of the trier of fact even if there is conflicting evidence that supports a different conclusion. *See Harco Nat'l Ins. Co.,* 765 S.W.2d at 810.

We conclude the evidence is factually sufficient to support the jury's finding. We further conclude the trial court did not abuse its discretion by denying Anna and Jan's request to remove Bart and Billie as independent co-executors. We overrule cross-points of error three and four.

### THE *IN TERROREM* CLAUSE

In cross-point six, Anna[7] complains the trial court erred because it did not declare the *in terrorem* clause in Jeannette's will did not apply to the cause of action brought by Anna and Jan.

### A. Forfeiture Clauses

 The threshold issue is whether as a matter of law there was a will contest. *Sheffield v. Scott,* 662 S.W.2d 674, 676 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd

n.r.e.). We strictly construe forfeiture provisions in a will. We avoid forfeiture if possible. We declare a forfeiture only where the acts of the parties come strictly within the clause. *Matter of Estate of Hodges,* 725 S.W.2d 265, 268 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *Sheffield,* 662 S.W.2d at 676. We narrowly construe *in terrorem* clauses to avoid forfeiture while at the same time fulfilling the testatrix's wishes as expressed in her will. *Estate of Newbill,* 781 S.W.2d 727, 728 (Tex.App.—Amarillo 1989, no writ).

### B. Factual Background

Anna and Jan sued Bart and Billie for breach of fiduciary duty in their management of Jeannette's estate. Bart invoked the *in terrorem* clause against Anna. The *in terrorem* clause provides:

> In the event any individual contests this Will or otherwise attempts to attach, modify or impair the validity of the provisions hereof, I direct that if such individual be a beneficiary hereunder, his or her sole inheritance from my estate shall be One Dollar ($1.00).

Bart counterclaimed against Anna seeking a declaratory judgment that Anna had violated the clause and forfeited her interest. Bart asserted that Anna's claim asserting that Bart and Billie violated their fiduciary duties, seeking their removal, and trying to declare the McLendon Company dissolved invoked the forfeiture clause. Bart concluded that Anna's action attempted to modify and impair the validity of Jeannette's will.

In her motion for judgment, Anna requested the trial court to conclude as a matter of law that the provision was invalid and did not apply to her cause of action. The trial court found as a matter of law that the *in terrorem* clause was not invalid. The trial court denied all other relief requested. By denying all other relief requested, the trial court implicitly denied Anna's declaratory relief that the clause did not apply to her cause of action. *See North E. Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 897–98 (Tex.1966).

---

**7.** Bart and Billie invoked the clause only against Anna.

### C. The Parties' Contentions

#### 1. Anna and Jan

Anna and Jan contend the trial court erred by not concluding as a matter of law the *in terrorem* clause did not apply to their causes of action. Anna and Jan contend their suit does not challenge the validity of the provisions in Jeannette's will; rather, it questions Bart's and Billie's execution of the provisions of Jeannette's will.

#### 2. Bart

Bart argues the *in terrorem* clause is not ambiguous and does not violate public policy. Bart further argues that Anna and Jan's actions did seek to impair the validity of the provisions of the will. Thus by merely challenging the co-executor's right to engage in business in partnership form, Bart contends Anna and Jan violated the clause. Bart concludes that because Anna and Jan have not established a defense to application of the clause, they forfeit their inheritance.

### D. Application of Law to the Facts

■ Anna and Jan asserted causes of action against Bart and Billie for breach of their fiduciary duties as co-executors of Jeannette's estate and to have the partnership amendments declared invalid. We conclude the claims do not contest the validity of the will itself.

We construe the language of the *in terrorem* clause to prohibit a beneficiary from contesting the validity of the will or seeking to attach, modify, or impair the validity of the provisions. It does not prohibit a beneficiary from instituting legal action against a co-executor for breach of fiduciary duties. We disagree with Bart's contention that the clause applies to any challenge of the co-executor's right to engage in business in partnership form. The right to challenge a fiduciary's actions is inherent in the fiduciary/beneficiary relationship.

Considering the guiding principles about *in terrorem* clauses, we find the trial court erroneously denied Anna's requested declaratory relief that the clause did not apply to her actions. An erroneous conclusion of law is not binding on this court. *See Bantuelle,* 667 S.W.2d at 818.

We find as a matter of law Anna and Jan's causes of action do not come within the prohibitions of the *in terrorem* clause. We sustain Anna and Jan's sixth cross-point.

We modify the trial court's judgment consistent with this opinion. We affirm the trial court's judgment as modified.