DALLAS MARKET CENTER
DEVELOPMENT CO.,
Appellant,

v.

Laurie LIEDEKER, Appellee.

No. 05–95–00732–CV.

Court of Appeals of Texas, Dallas.

July 23, 1996.

218

Tom J. Stollenwerck, Gregory R. Ave, Touchstone Bernays Johnston Beall & Smith, Dallas, for Appellant.

Edwin E. Wright, III, Stradley & Wright, P.C., Dallas, Ronald D. Wren, Bedford, for Appellee.

Before LAGARDE, KINKEADE and MALONEY, JJ.

## OPINION

MALONEY, Justice.

Laurie Liedeker sued Dallas Market Center Development Company (DMC) for injuries she received from a DMC freight elevator. The jury found DMC liable and the trial court granted judgment for Liedeker. In six points of error, DMC argues the trial court erred in: (1) not instructing the jury on the proper standard of care; (2) including an erroneous negligence definition; (3) not submitting a premises liability instruction; (4) giving an incomplete jury instruction on negligence; (5) admitting evidence of prior acts and conditions; and (6) admitting certain plaintiff's exhibits. We affirm the trial court's judgment.

## BACKGROUND

DMC owned the Loew's Anatole Hotel. Liedeker was a florist. She had placed about twenty-five plants and trees in the hotel's Kymer Ballroom for a special event. After the event, Liedeker removed the plants and trees. She placed the plants and trees on a dolly to move them to the freight elevator. Then she loaded the plants and trees on the Kymer freight elevator. As Liedeker loaded the last dolly on the elevator, the elevator gate lowered without warning and struck her on the head. Liedeker suffered a herniated disk in her neck that required surgery.

The Kymer freight elevator had a timing device that automatically closed the gate twenty-one seconds after the gate opened. An expert on elevator safety testified freight elevators normally do not have doors or gates that close automatically. He opined that the hotel imprudently allowed dangerous conditions to exist. Specifically, he noted the lighting was inadequate, there was no warning sign, the gate traveled downward too rapidly, and the alarm bell was inoperative. The expert's investigation indicated the hotel had muffled the bell purposely because the noise inconvenienced the hotel's guests.

Otis Elevator Company maintained the hotel elevators. Otis's serviceman testified someone had muffled the bell on the Kymer elevator and other elevators at the hotel on more than one occasion. He suspected the hotel's engineering department muffled the bells. Other witnesses that had ridden the Kymer elevator on numerous occasions testified that they had not heard the bell. The jury found Liedeker was not contributorily negligent and that DMC's negligence proximately caused Liedeker's injuries.

## LIABILITY THEORIES

### 1. Negligent Activity

#### a. Reasonable Care

A party who does that which a person of ordinary prudence would not do, or does not do that which a person of ordinary prudence would do under the same or similar circumstances acts negligently. *See Great Atlantic & Pac. Tea Co. v. Evans*, 142 Tex. 1, 4, 175 S.W.2d 249, 251 (1943). Courts refer to this as a negligent activity theory of liability. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992); *Lawson v. B Four Corp.*, 888 S.W.2d 31, 34 (Tex.App.—Houston [1st Dist.] 1994, writ denied). We apply a "reasonable care" standard when a plaintiff alleges the defendant failed to perform a duty arising from circumstances that posed a foreseeable danger or injury. *Lawson*, 888 S.W.2d at 34; *see Evans*, 175 S.W.2d at 250–51.

#### b. High Degree of Care

Courts hold common carriers to a higher standard of care. Common carriers must use the same degree of care that a very cautious, prudent, and competent person would use under the same or similar circumstances. Common carriers must exercise a high degree of foresight to identify possible dangers and a high degree of prudence to guard against them. *Durham Transp., Inc. v. Valero*, 897 S.W.2d 404, 408 (Tex.App.—Corpus Christi 1995, writ denied). Owners of elevators are not common carriers. *Farmers' & Mechanics' Nat'l Bank v. Hanks*, 104 Tex. 320, 328–29, 137 S.W. 1120, 1125 (1911). Nevertheless, we hold elevator owners to the same high degree of care. *See Hanks*, 137 S.W. at 1124; *DeLeon v. Otis Elevator Co.*, 610 S.W.2d 179, 180 n. 1 (Tex. Civ.App.—San Antonio 1980, writ ref'd n.r.e.)(submitting the jury issue that elevator owner owed a high degree of care to invi-

tees); *but see Bond v. Otis Elevator Co.*, 388 S.W.2d 681, 685 (Tex.1965)(approving intermediate appellate court's opinion suggesting elevator owner owed a duty to maintain its elevators in a reasonably safe condition).

## 2. Premises Liability

■ When a premises condition causes injury, the injured party can only recover under a premises liability theory. *See Keetch,* 845 S.W.2d at 264. To prevail on a premises liability claim, a plaintiff must prove that:

(1) The owner-operator had actual or constructive knowledge of some condition on the premises;

(2) the condition posed an unreasonable risk of harm;

(3) the owner-operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) the owner-operator's failure to use such care proximately caused the plaintiff's injuries.

*Keetch,* 845 S.W.2d at 264.

### DMC'S ARGUMENTS

In DMC's first four points of error, it challenges Liedeker's liability theory and the appropriate standard for the jury to consider. DMC argues that because Liedeker's cause of action had as its basis premises liability, the trial court erred in submitting definitions in the jury charge that did not correspond to the premises liability standard of care. DMC contends the trial court erred by: (1) not properly instructing the jury on the standard of care; (2) defining "negligence" to include a "high" degree of care, instead of the "reasonable" degree of care applicable to premises liability; (3) refusing to submit a broad-form instruction on premises liability; and (4) instructing the jury on "negligence" without including the additional elements of premises liability.[1] DMC contends it preserved its complaint by requesting premises liability definitions.

1. DMC does not argue the trial court should have submitted definitions and instructions on the rea-

## 1. Objections to Jury Charge

### a. Applicable Law

■ Counsel must object to the jury charge before the trial court reads the charge to the jury or "[a]ll objections ... [are] waived." TEX.R.CIV.P. 272. Counsel must point out distinctly and specifically the objectionable matter and grounds of the objection, or counsel waives any complaint. TEX.R.CIV.P. 274. To preserve a complaint for appellate review, a party must present a timely request, objection, or motion to the trial court and must state the specific grounds on which it bases its complaint, if the specific grounds are not apparent from the context. TEX.R.APP.P. 52(a). An objection at trial not comporting with the complaint on appeal presents nothing for appellate review. *Scurlock Permian Corp. v. Brazos County,* 869 S.W.2d 478, 484 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

### b. Application of the Law to the Facts

Jury question number one addressed Liedeker's contributory negligence. The trial court charged the jury on the reasonable care standard applicable to negligent activity. DMC did not object to jury question one.

Jury question number two addressed DMC's negligence. Because DMC owned the elevator, the trial court, relying expressly on *DeLeon,* charged the jury on the high-degree-of-care standard. *DeLeon,* 610 S.W.2d at 180 n. 1. At trial, DMC objected to the trial court's submitting of jury question number two as follows:

This defendant would object to the definition of "negligence" as used in Question Number 2 as it is an incorrect definition and standard with which to judge the conduct of [DMC], and it imposes a greater burden on it than required by law. Defendant would further show that there are no proper pleadings to support such definition.

\* \* \* \* \* \*

This defendant would object to the definition of "high degree of care" as defined

sonable care standard applicable to negligent activity.

in the Court's Charge as it is an incorrect definition with respect to the conduct of [DMC], and such definition imposes a greater burden on it than required by law.

This defendant would further object because there are no proper pleadings to support the submission of said issue.

In regard to the definitions of "negligence" and "high degree of care," this defendant would urge the Court to define "negligence" and "ordinary care" in Question Number [two] as it is set forth in Question Number [one], the only change being that when viewed as the conduct of [DMC].

■ We disagree that no proper pleadings existed to support the trial court's submitting a charge on the high-degree-of-care standard. Liedeker's pleadings alleged that:

> [Liedeker] would show that at the time and on the occasion in question, [DMC] owed [Liedeker] a duty of high degree of care required of common carriers of passengers of the elevator under its exclusive control and management. [DMC] breached its standard of care and such a breach of these duties was a proximate cause of [Liedeker's] injuries and damages set forth herein.

This pleading alone supports the trial court's submission of the definition of, and an issue on, a high degree of care.

■ DMC's objections did not make the trial court aware of its complaint, as DMC appeared to argue the reasonable care standard applied, not the premises liability standard. Nor is it apparent from the context of DMC's objections that it was complaining that the trial court should submit a jury charge on the premises liability standard. DMC distinctly and specifically asked the trial court to "define" the reasonable care standard in jury question number two "as it is set forth in Question Number [one]." Orally requesting the trial court to use the reasonable care standard from jury question number one would not place the trial court on notice that DMC was objecting to the trial court's failure to submit the additional factors required under a premises liability theory. DMC waived any objections to the trial court's failure to submit a jury issue on premises liability. Tex.R.Civ.P. 272, 274; Tex.R.App.P. 52(a); *Scurlock Permian Corp.,* 869 S.W.2d at 484.

### 2. Requested Jury Charges

#### a. Applicable Law

■ We do not reverse a trial court's refusal to submit a requested definition unless the complaining party tenders a substantially correct definition in writing. Tex. R.Civ.P. 278. When a party requests an instruction, question, or definition, and the trial court refuses the requested instruction, question, or definition, the court "shall endorse thereon 'Refused,' and sign the same officially." Tex.R.Civ.P. 276. If the trial court does not endorse the requested question "refused," the party has not preserved error. *McLendon v. McLendon,* 862 S.W.2d 662, 674 (Tex.App.—Dallas 1993, writ denied); *Demler v. Demler,* 836 S.W.2d 696, 698–99 (Tex.App.—Dallas 1992, no writ); *but see Oechsner v. Ameritrust Texas, N.A.,* 840 S.W.2d 131, 133 (Tex.App.—El Paso 1992, writ denied). Even if a party does not strictly comply with the rules, a party nevertheless preserves error when it timely and plainly makes the trial court aware of its complaint and obtains a ruling. *Alaniz v. Jones & Neuse, Inc.,* 907 S.W.2d 450, 451–52 (Tex.1995)(per curiam)(holding "[*Payne*] . . . mandate[s] that [the] requirements [of the rules of procedure] be applied in a common sense manner to serve the purposes of the rules, rather than in a technical manner which defeats them."); *State Dept. of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 239–41 (Tex.1992).

#### b. Application of the Law to the Facts

Shortly after the trial court overruled DMC's objections to the charge, the following occurred:

> [DMC]: Your Honor, the only other thing I have, I filed this morning some requested issues and instructions. I have provided copies to [opposing counsel]. And I would just request that the Court just refuse them—
>
> THE COURT: I will sign off on them.
>
> [DMC]: and sign off on them.

THE COURT: Well, you don't want to request that the Court refuse them. You just want to request that the Court make its ruling, don't you?

[DMC]: That's right.

THE COURT: And note that they are refused.

[DMC]: You're right. Take that off the record.

THE COURT: I know what you meant.

[DMC]: Thank you, your Honor. If you would just sign them, I would appreciate it.

THE COURT: I will do that.

Notwithstanding the trial court's assurances it would sign off on the requested definitions, the trial court did not endorse them.

█ We agree DMC's filed "requested issues and instructions" included definitions that apply to the premises liability standard. Although the record shows DMC filed its requested definitions, the record is not clear on whether DMC presented a copy of its requested definitions to the trial court or whether the trial court had the filed requests physically before it.[2] The discussion between DMC and the trial court is not sufficient to show the trial court was aware that DMC was requesting a premises liability charge. DMC merely requested the trial court "sign them." DMC relies on the above exchange to show it made the trial court aware of its complaint. Nothing in the exchange alerted the trial court that the requested definitions varied from DMC's earlier objections.

DMC's contention that the trial court orally refused its requested definitions is not supported by the record. The statement of facts shows the trial court *intended* to sign off on DMC's requested definitions. At a subsequent hearing in which DMC moved the trial court "to endorse" his requested jury instructions, the trial court's comments still do not show that it understood DMC was requesting a premises liability charge.[3] Although DMC's motion for new trial listed their requested jury instructions, including a premises liability standard, DMC continued to focus its argument on the reasonable standard of care as opposed to high degree of care for negligent activity. The trial court continued to perceive the issue as the proper standard of care for negligent activity.

DMC has not shown it made the trial court aware that its request was for submission of questions and definitions on the premises liability standard. We conclude DMC has not preserved error. *See Universal Servs. Co. v. Ung,* 904 S.W.2d 638, 640 (Tex.1995).

We overrule DMC's points of error one through four.

## PLAINTIFF'S EXHIBITS

In points of error five and six, DMC argues the trial court erred in admitting three letters, plaintiff's exhibits numbers thirty-three, thirty-four, and thirty-five (the letters). It argues the letters showed prior acts and conditions to prove that DMC had a propensity to deactivate the warning bells on freight elevators and DMC acted in conformity with that propensity on the date Liedeker was injured. DMC contends the admission of these three letters violated rule 404(b) of the Texas Rules of Civil Evidence and were highly prejudicial.

### 1. Applicable Law

The rules provide that "[e]vidence which is not relevant is inadmissible." Tex.R.Civ. Evid. 402. The rules also prohibit the admission of evidence of other wrongs to prove a person acted in conformity therewith. Tex.R. .Civ. Evid. 404(b). A party, whose objection on appeal differs from its objection at trial, presents nothing for appellate re-

---

**2.** Had the trial court endorsed DMC's requested definitions, we could conclusively presume DMC presented them at the proper time. Tex.R.Civ.P. 276.

**3.** The trial court made the following comment:
I think [DMC] had some general objections to the charge and then a specific objection to the submission of high degree of care. And [DMC] had submitted—if I recall correctly, [DMC] had submitted the day before argument [its] request—jury questions, and then the morning before the argument was when [it] submitted [its] ordinary care question—standard of care instruction.

view. *Scurlock Permian Corp.*, 869 S.W.2d at 484.

## 2. Application of Law to the Facts

■ At trial, DMC objected to the admission of the three letters "because they do not relate or deal with the Kymer freight elevator, which is what is involved in this lawsuit, and are immaterial and irrelevant to any issue pending in this case"—a rule 402 objection. On appeal, DMC complains the letters were admitted to show it acted in conformity therewith—a rule 404(b) objection. DMC's objection on appeal does not comport with its objection at trial. DMC presents nothing for appellate review.

■ Even if DMC's argument on appeal comported with its objection at trial, we conclude DMC nevertheless waived the alleged error. When the trial court erroneously admits evidence, the complaining party waives error if it does not object to the admission of other evidence to the same effect. *Badger v. Symon*, 661 S.W.2d 163, 164 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

■ The first letter, plaintiff's exhibit thirty-three, is a November 19, 1985 letter from the hotel to Otis instructing Otis to disconnect the warning bells on the Tower freight elevators because guests had complained the ringing interrupted their meetings. The letter also requested Otis's advice on the hotel's replacing the bells with red flashing lights. Plaintiff's exhibit thirty-four is a November 20, 1985 letter from Otis to the hotel (a) informing the hotel Otis had removed the alarm bells on two freight elevators, (b) advising the hotel removing the bells violated the safety code, (c) recommending installation of buzzers, and, if the hotel determined buzzers would still disturb its guests, (d) requesting written confirmation instructing Otis not to install buzzers. Plaintiff's exhibit thirty-five is a September 29, 1988 letter from Otis to the hotel (a) informing the hotel someone may have removed or otherwise rendered inoperative the "audible devices" on a freight elevator, (b) informing the

hotel this violated the safety code, and (c) requesting installation of a toned-down audible signal and a flashing light.

Ernie Perry, who worked part time for Liedeker and who had worked functions at the Kymer Ballroom for many years, testified. He witnessed Liedeker's accident. Perry did not hear a warning bell on that occasion. Nor had he heard a warning bell on any of the other thirty to fifty occasions he used the elevator.

Kevin Robinson, who also witnessed the accident, testified that no warning bell rang when the gate closed. He had used the elevator on other occasions. Robinson said when the gate closed on these other occasions, the bell usually rang. However, there were other instances when the gate closed and the bell did not ring.

Harry Hampton worked for Otis Elevator Company for thirty-three years. He had inspected and repaired thousands of elevators in his career, had served for several years on the State of Texas Elevator Committee,[4] and currently served with the American Society of Mechanical Engineers.[5] Hampton was an expert in elevator safety. He inspected the Kymer freight elevator on Liedeker's behalf. He concluded the hotel had imprudently allowed dangerous and unsafe conditions to exist. Specifically, he noted the warning system was not operational. He stated, "There were reports that [the bell] had been muffled, and the hotel had been put on notice by Otis Elevator Company that it had been muffled." Hampton found no evidence the bell had worn out or malfunctioned mechanically. Hampton said the safety code required a warning bell to sound when the elevator gate closed.

Liedeker testified that no bells sounded before the gate hit her, and she saw no flashing lights. She too had used the elevator before and had never heard a warning bell.

William Cox, a service examiner for Otis, inspected the Kymer freight elevator once a

---

4. The Texas Elevator Committee addressed elevator safety in the State of Texas.

5. The American Society of Mechanical Engineers writes the elevator safety codes governing elevator use and safety in the United States.

month. His inspection included determining whether the bell worked. Additionally, if the bell was not working, he would repair it. About a month after Liedeker's accident, he checked the bell on the Kymer freight elevator, and it worked. On at least one occasion, someone muffled the bell on the Kymer freight elevator. On more than one occasion in the past, someone muffled the bells on the hotel's two other freight elevators as well. Cox explained guests constantly complained about the bells, so someone would muffle them.

Perry's, Robinson's, Hampton's, Liedeker's, and Cox's testimony was admitted without objection. Their testimony had the same effect as the three letters—the hotel guests complained about the bells, someone silenced the bells, and the safety code required a bell to ring when an elevator gate closed. DMC, by not objecting to the above testimony, waived its complaint on the admission of the letters. *See Badger*, 661 S.W.2d at 164. We overrule DMC's fifth and sixth points of error.

We affirm the trial court's judgment.