**WAREHOUSE PARTNERS and Glendale Management Co., Appellants,**

v.

**Robert GARDNER, Appellee.**

No. 05–94–01725–CV.

Court of Appeals of Texas, Dallas.

July 27, 1995.

Scott A. Scher, Scher & Gold, LLP, Dallas, for Appellants.

Lynn G. Warren, Lindy D. Jones, Jones Allen & Fuquay, LLP, Dallas, for Appellee.

Before LAGARDE, OVARD and WRIGHT, JJ.

## OPINION

LAGARDE, Justice.

Warehouse Partners and Glendale Management Company appeal from the county court at law's judgment granting Robert Gardner a writ of reentry. Appellants bring eighteen points of error generally contending that: (a) the findings of fact do not support the judgment; (b) no evidence or insufficient evidence supports the findings of fact; (c) the trial court's conclusions of law are erroneous; (d) the trial court erred in admitting certain evidence; and (e) the trial court's judgment provides relief not requested in the pleadings. Gardner brings one crosspoint requesting rule 84 sanctions. We overrule the points of error and the crosspoint and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Gardner is a manufacturer's representative. He owns his own business as a sole proprietorship, Gardner Marketing Group, based in Dallas. He also is a vice president for a Massachusetts-based business, Safety First, Inc. These businesses require Gardner to spend substantial time traveling outside Dallas. Gardner owns a condominium in Massachusetts and has an office in the offices of Safety First in Massachusetts. Gardner also owns a house in Dallas.

Appellant Glendale Management Co. is an agent for appellant Warehouse Partners, the owner of the Lease Space. George Burch is a part owner of Glendale Management Co. and is a general partner of Warehouse Partners.

Gardner decided to consolidate his office and home. He leased a warehouse, the Lease Space, from appellants, with Gardner Marketing Group designated as the tenant, and discussed with appellants having an apartment and office built into it. Appellants drew up the plans for the apartment and office and built it. With the help of an interior designer, Gardner furnished the apartment. He had an industrial kitchen installed. With appellants' aid, he obtained residential rates for the utilities installed in the apartment. In anticipation of his moving into the apartment, Gardner rented his Dallas house. When the apartment was almost finished, Gardner moved into it. He has resided in the Lease Space whenever he has been in Dallas from the time he moved in until the time of trial, except for the period he was locked out. He testified that he has spent an average of fifteen days each month in the Lease Space over the term of the lease.[1] All of his mail, except for the utilities on his Massachusetts condominium, is delivered to the Lease Space. He has a tenant's homeowner's insurance policy on the Lease Space.

In 1994, Gardner ran advertisements in the *Dallas Observer* about subleasing the Lease Space. Gardner testified that his intent was to determine whether a market existed to sublease the Lease Space during the extensive time he traveled. He received many responses to the advertisement, but he did not extend any offers to sublease the Lease Space. Gardner tried to arrange a meeting with Burch to discuss subleasing the Lease Space, but the meeting never occurred.

In April 1994, Gardner failed to pay the correct amount of rent. Appellants changed the locks on the Lease Space. Gardner demanded a key to the Lease Space from appellants, but they refused. Gardner filed suit in the justice court seeking a writ of reentry. In the complaint filed in the justice court, Gardner alleged that appellants had conducted an unlawful lockout by not giving him a key to the new locks as required by section 92.008 of the Texas Property Code. After an ex parte hearing in the justice court, Gardner obtained a writ of reentry, and appellants gave him a key to the apartment. The justice court held a full hearing on the merits of the writ and again decided for Gardner. Appellants then filed an appeal by trial de novo in the county court at law. After a bench trial on the merits, the county court at law ruled that Gardner was entitled to the writ of reentry.

## FINDINGS SUPPORTING THE JUDGMENT

In their first point of error, appellants contend that the findings of fact do not support the trial court's judgment. Appellants assert that before the court could find that they violated the residential lockout statute, the court had to find that the apartment was a "dwelling," which the property code defines as a "permanent residence." *See* TEX.PROP. CODE ANN. § 92.001(1) (Vernon 1995).[2] The trial court found that the apartment was Gardner's residence, but the findings do not expressly state that the apartment was his *permanent* residence. Appellants assert that under Texas Rule of Civil Procedure 299 the trial court's failure to find the "permanent"

---

1. Gardner's testimony about the time he spent in Dallas versus on business travels was somewhat contradictory. Besides testifying that he averaged about 15 days each month in the Lease Space, he also testified that he spent 75%–85% of his time on business travels. He stated he is in Massachusetts about once each week and usually spends at least one night in the condominium.

2. Chapter 92 of the Texas Property Code governs residential tenancies. The residential lockout statute, Texas Property Code section 92.008(d),

applies to landlords changing the locks of tenants who are delinquent in paying rent. TEX.PROP. CODE ANN. § 92.008(d) (Vernon 1995). "Landlord" and "tenant" are defined for purposes of chapter 92 as the lessor and lessee, respectively, of a "dwelling." TEX.PROP.CODE ANN. § 92.001(2), (6) (Vernon 1995). A "dwelling" is defined as "one or more rooms rented for use as a permanent residence under a single lease to one or more tenants." TEX.PROP.CODE ANN. § 92.001(1) (Vernon 1995).

requirement leaves the judgment unsupported. *See* TEX.R.CIV.P. 299.

Appellants overlook the fact that rule 299 permits findings of an element of a cause of action or ground of defense supported by the evidence to be presumed when another element of that cause of action or ground of defense is included in the trial court's findings. *See* TEX.R.CIV.P. 299.[3] One of the elements of Gardner's cause of action for writ of reentry was that he was not given a key to the premises when he demanded one. *See* TEX.PROP.CODE ANN. §§ 92.008(d)(2), 92.009(b) (Vernon 1995). The trial court's ninth finding of fact states, "Pursuant to Texas Property Code § 92.008, Gardner orally requested that he be given the new key so he could have access to his residence, but was refused." Because the trial court found an element of the cause of action, the element of *permanent* residence could be supplied by presumption if any evidence in the record supports it.

The property code does not define "permanent" residence, the parties do not cite any case defining it nor has our research revealed any, and the parties have not offered any definitions of "permanent." A "permanent" residence is distinguishable from a temporary residence, such as a hotel or motel. The property code describes those residences as "transient housing." *See* TEX. PROP.CODE ANN. § 92.152(a) (Vernon 1995).

In this case, the record shows that for nearly two years prior to the lockout, Gardner had used the Lease Space as his residence. We conclude that this evidence constitutes some evidence that the Lease Space constituted Gardner's "permanent residence" and therefore his "dwelling." Thus, the express and presumed findings support the trial court's judgment applying the lockout provisions of section 92.008 to Gardner and appellants. We overrule appellants' first point of error.

3. Rule 299 provides:
   When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In their second through tenth points of error, appellants contend that no evidence or insufficient evidence supports the trial court's findings of fact. In their eleventh through thirteenth points of error, appellants contend that the trial court erred in making certain conclusions of law.

### Standard of Review

Findings of fact in a case tried to the court have the same force and effect as a jury's verdict on jury questions. *Gregory v. Sunbelt Sav., F.S.B.*, 835 S.W.2d 155, 158 (Tex.App.—Dallas 1992, writ denied); *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). We review the trial court's findings of fact by the same standards that are applied in reviewing the evidence supporting a jury's answers. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ).

In reviewing a no-evidence point of error, we consider only the evidence and inferences that support the challenged finding. *Gregory*, 835 S.W.2d at 158. All contrary evidence and inferences are disregarded. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). We uphold the trial court's findings if there is more than a scintilla of evidence to support them. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex.1979).

In reviewing a factual-sufficiency point of error, we consider all of the evidence. A finding will be set aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is wrong and manifestly unjust. *Gregory*, 835 S.W.2d at 158.

element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment. TEX.R.CIV.P. 299.

**24**

Challenges to the trial court's conclusions of law are reviewed as a matter of law, not on sufficiency of the evidence grounds. *McLendon v. McLendon,* 862 S.W.2d 662, 674 (Tex.App.—Dallas 1993, writ denied); *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds by Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 894 (Tex.1991) (sufficiency of waiver of notice of intent to accelerate). An erroneous conclusion of law is not binding on this Court. *Bantuelle v. Williams,* 667 S.W.2d 810, 818 (Tex.App.—Dallas 1983, writ ref'd n.r.e.) (per curiam). When a party attacks conclusions of law on appeal, we have the power and the duty to evaluate those conclusions. *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied). A trial court's application of law to facts is accorded limited deference. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A failure of the trial court to analyze or apply the law correctly is an abuse of discretion. *Walker,* 827 S.W.2d at 840.

**The Lease Space as Gardner's Residence**

In their second point of error, appellants contend that there is no evidence or insufficient evidence to support the trial court's finding that Gardner signed the lease in his individual capacity. The record shows that the tenant was Gardner Marketing Group, by Robert Gardner. Because Gardner Marketing Group is a sole proprietorship, and Texas law does not recognize a distinction between an individual and his sole proprietorship, Gardner's signature in his capacity as Gardner Marketing Group also constituted a signature in his individual capacity. *See Ideal Lease Serv., Inc. v. Amoco Prod. Co.,* 662 S.W.2d 951, 952 (Tex.1983) (sole proprietorship has a legal existence only in the identity of the sole proprietor); *Holberg & Co. v. Citizens Nat'l Assurance Co.,* 856 S.W.2d 515, 517–18 (Tex.App.—Houston [1st Dist.] 1993, no writ) (same). Accordingly, the record contains some evidence and sufficient evidence that Gardner signed the lease in his individual capacity. We overrule appellants' second point of error.

In their third point of error, appellants assert that there is no evidence or insufficient evidence to support the trial court's finding that the Lease Space was to be built out as Gardner's personal residence. In their fourth point of error, appellants contend that there is no evidence or insufficient evidence to support the trial court's finding of fact that appellants knew the property was to be built out and used as Gardner's residence. Gardner testified that he told Denise Hitchcock, Gardner's contact with appellants, about his plan for "wanting to live and office in one unit." Hitchcock took Gardner to the Lease Space. Gardner had numerous meetings with Hitchcock and Burch, and they came up with a plan for exactly what Gardner envisioned. Burch testified that he approved the plans for the build out. We hold that this is some evidence and sufficient evidence to support the trial court's findings that the Lease Space was to be built out as Gardner's personal residence and that appellants knew that it was to be built out and used as Gardner's personal residence. We overrule appellants' third and fourth points of error.

In their fifth, sixth, seventh, and ninth points of error, appellants contend that there is no evidence or insufficient evidence to support the trial court's finding of fact that Gardner occupied the property as his residence and that appellants, through their agents Burch and Hitchcock, knew that he lived in the Lease Space. Appellants assert that Gardner's failure to maintain residence at the Lease Space on any consistent or regular basis showed that he did not reside in the Lease Space. The record shows that Gardner stayed in the Lease Space whenever he was in Dallas. The record also shows that almost all of Gardner's mail was sent to the Lease Space. His insurance policies, credit card statements, IRS tax information (including tax information regarding his position with Safety First in Massachusetts), and bank accounts used the Lease Space as his address. The Lease Space held his clothes, furniture, and art collection. Gardner testified about the touches he added to the design and furnishing of the apartment to make it his home. The record shows appellee did

reside in the Lease Space consistently. The record also shows that appellants drew up the plans for the build out of the Lease Space, including the loft apartment Gardner used as his residence. Burch had been in the Lease Space after Gardner moved in and had seen his clothes in the apartment. Hitchcock helped Gardner obtain residential utility rates. We hold that this evidence constitutes some evidence and sufficient evidence to support the trial court's findings that Gardner resided in the Lease Space, had resided in it since the fall of 1992 when he moved in, and that appellants knew that he resided there.

■ Appellants assert that the style of the lease, "Office Lease," shows that Gardner did not use the Lease Space as his residence. Gardner testified that he had no control over the style or terms of the lease. The Lease Space includes office space as well as residential space. The style of the lease does not affect the sufficiency of the evidence supporting the trial court's findings.

■ Appellants also assert that the Lease Space is designated as commercial property in the records of the Dallas Central Appraisal District. A Development Code Specialist with the City of Dallas testified that a "commercial property" zoning designation would not prevent a person from using the Lease Space as residential property. The District's designation does not affect the sufficiency of the evidence.

■ Appellants next assert that Gardner's attempt to sublease the property shows he did not permanently reside there. Gardner testified that he placed the advertisements to gauge the market. Although Gardner tried to arrange a meeting with Burch to discuss subleasing the Lease Space, the meeting never occurred. Gardner never quoted any prices or sent information to anyone answering his advertisement. His advertisements concerning subleasing do not affect the sufficiency of the evidence.

■ Appellants assert that the presence of Lorraine Morris, an employee of Gardner Marketing Group, at the Lease Space performing job-related activities, shows appellant did not reside there. The Lease Space contained the offices of Gardner Marketing Group as well as Gardner's residence. The presence of an employee of Gardner Marketing Group in the Lease Space every day does not affect the sufficiency of the evidence showing that Gardner resided in the Lease Space.

■ Appellants assert that Gardner's ownership of a condominium and having an office in Massachusetts show that he did not reside in the Lease Space. Gardner's Massachusetts office was related to his job as vice president of Safety First, Inc. Gardner stayed in the condominium when he was in Massachusetts, which he testified was usually at least one day each week. The only mail Gardner received at his condominium was the utility bills for it. Proof of Gardner's having an office and owning a condominium in Massachusetts did not affect the sufficiency of the evidence showing that Gardner resided in the Lease Space.

Appellants also assert that case law prevents the Lease Space from being Gardner's residence. They rely on *Davis v. City of Houston*, 869 S.W.2d 493 (Tex.App.—Houston [1st Dist.] 1993, writ denied), and *Davis v. Hinton*, 374 S.W.2d 723 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.). Those cases involve deed restrictions limiting the use of the property to single-family residences. In *Davis v. City of Houston*, the appellant operated a beauty salon in a house. Neither the appellant nor anyone else lived on the property. *City of Houston*, 869 S.W.2d at 494. In *Davis v. Hinton*, the appellant leased different rooms in the house for business purposes. The appellant did not reside in the house, but he rented a room to his brother to live in after suit was filed. *Hinton*, 374 S.W.2d at 726. In these deed-restriction cases, the buildings were not used as single-family residences as required. In this case, Gardner resided in the Lease Space. Accordingly, appellants' cases are not applicable.[4]

4. Appellants may be citing these deed restriction cases to argue that chapter 92 of the property code does not apply to property with mixed commercial and residential uses. At oral argument,

■ Appellants assert that the Lease Space did not constitute Gardner's "permanent residence" because Gardner had filed in the real estate records a designation of his Dallas house as his homestead. Appellants assert that the homestead designation estopped Gardner from claiming any other property as his permanent residence. Appellants cite no authority for this proposition in their brief. At oral argument, appellants cited one case in support of this argument, *Weisenburg v. Teleprompter Corp.,* 605 S.W.2d 737 (Tex.Civ.App.—Dallas 1980, no writ). In that case, this Court held that designation of a homestead was *evidence* of permanent residence. *Weisenburg,* 605 S.W.2d at 739. The Court quoted the supreme court's definition of "homestead," which appellants appear to equate with permanent residence: "a true, fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Weisenburg,* 605 S.W.2d at 739 (quoting *Snyder v. Pitts,* 150 Tex. 407, 241 S.W.2d 136, 140 (1951)). Gardner's testimony supports the application of this definition to the Lease Space. Gardner testified that he rented his house when he moved into the Lease Space. Gardner's designation of his Dallas house as his homestead does not render insufficient the evidence showing Gardner's use of the Lease Space as his permanent residence. We overrule appellants' fifth, sixth, seventh, and ninth points of error.

In their eleventh point of error, appellants contend that the trial court erred in making a conclusion of law that Gardner took possession of the Lease Space as a residential tenant. Appellants provide no additional argument not discussed in their factual sufficiency points of error. As discussed above, the evidence was sufficient to support the trial court's findings. Those findings support this conclusion of law. Accordingly, we hold that the trial court did not err in making the conclusion of law that Gardner took possession of the Lease Space as a residential tenant. We overrule appellants' eleventh point of error.

however, appellants conceded that chapter 92 of the property code relating to residential lease-

■ In their tenth point of error, appellants contend that the trial court erred in finding that appellants' actions damaged Gardner. Appellants provide no argument or authority on this point of error. The section of their brief purporting to discuss this point of error discusses only whether Gardner's pleadings entitle him to the relief granted in the judgment. Nowhere does that section of the brief discuss the sufficiency of the evidence of the challenged finding. Nor does any other section of appellants' brief discuss this finding. Because appellants did not argue or present authorities in support of the point of error, they have waived the point of error. *See* Tex.R.App.P. 74(f); *Jones v. Texas Pac. Indem. Co.,* 853 S.W.2d 791, 796 (Tex.App.—Dallas 1993, no writ). We overrule appellants' tenth point of error.

### Notice of Lockout

Gardner testified that Lorraine Morris, his employee, informed him that a notice of lockout was posted on the door of the Lease Space. This notice was printed on Glendale Management Co. stationery. The notice stated that the management had "modified" the door locks pursuant to section 92.008 of the Texas Property Code. The notice informed Gardner that he could obtain a key to the Lease Space "at any hour from the person named below." The notice designated Denise Hitchcock as the person from whom a key could be obtained.

■ In their fifteenth point of error, appellants contend that the trial court erred in admitting the notice of lockout over appellants' objections. The rules of appellate procedure require argument in support of a point of error to include "such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." Tex.R.App.P. 74(f). Appellants cite no authority in support of their argument in this point of error. Accordingly, we overrule appellants' fifteenth point of error. *See Malouf v. Dallas Athletic Country Club,* 837

holds applies to the hybrid use of property.

S.W.2d 674, 678 (Tex.App.—Dallas 1992, writ dism'd w.o.j.).

■ In their eighth point of error, appellants contend that no evidence or insufficient evidence supports the trial court's finding that appellants posted a statutory notice of lockout under Texas Property Code section 92.008. The notice of lockout, posted on Gardner's door, was admitted into evidence. The notice complies with the requirements of section 92.008 of the Texas Property Code and expressly references section 92.008. We hold this evidence constitutes some evidence and sufficient evidence to support the trial court's finding. We overrule appellants' eighth point of error.

In their twelfth point of error, appellants contend that the trial court erred in making a conclusion of law that Gardner was locked out under section 92.008 of the Texas Property Code. The notice of lockout itself cited section 92.008. Appellants have not shown the trial court erred in making this conclusion. We overrule appellants' twelfth point of error.

In their fourteenth point of error, appellants contend that the trial court erred in applying the provisions of section 92.008 in this case. Appellants' argument on this point depends upon the success of their argument that the Lease Space was not a "dwelling," i.e., Gardner's permanent residence. We have already held that the findings, express and presumed, that the Lease Space is Gardner's "dwelling" and permanent residence are supported by the evidence. Because the Lease Space was Gardner's dwelling, section 92.008 applied to this case. We overrule appellants' fourteenth point of error.

■ In their thirteenth point of error, appellants contend that the trial court erred in concluding that appellants violated section 92.008 of the Texas Property Code and unlawfully locked out Gardner. Section 92.008(d) provides: "If a landlord's agent changes the door lock of a tenant who is delinquent in paying rent, the landlord or the landlord's agent must: ... (2) provide the new key to the tenant at any hour, regardless of whether or not the tenant pays any of the delinquent rent." TEX.PROP.CODE ANN.

§ 92.008(d)(2) (Vernon 1995). In this case, appellants "modified" the door locks of the Lease Space because Gardner was delinquent in paying rent. Appellants were obligated to provide him with a key on demand, but they refused to provide him with a key until he paid the delinquent rent. Appellants clearly violated the provisions of section 92.008(d), and the trial court did not err in so concluding. We overrule appellants' thirteenth point of error.

## TRIAL COURT'S JUDGMENT

In their sixteenth point of error, appellants contend that the trial court's judgment is void because it contains relief not requested in the pleadings. In their seventeenth and eighteenth points of error, appellants contend that the trial court erred in stating in the judgment that Gardner's "damages and attorneys' fees are reserved for determination in Cause No. cc–94–3114–e in the County Court at Law No. 5 styled the same as this case."

Section 92.008(e) of the property code provides the tenant's remedy for the landlord's violation of section 92.008: recovery of possession of the premises or termination of the lease; recovery of the larger of the tenant's actual damages, one month's rent, or $500; and recovery of attorney's fees and court costs, less any delinquent rents or other sums the tenant owes the landlord. TEX. PROP.CODE ANN. § 92.008(e) (Vernon 1995). Section 92.009 of the property code provides the procedure for obtaining a writ of reentry due to a landlord's violation of section 92.008. TEX.PROP.CODE ANN. § 92.009(a) (Vernon 1995). Section 92.009(j) provides that a tenant may "pursue a separate cause of action under Section 92.008." TEX.PROP.CODE ANN. § 92.009(j) (Vernon 1995). We construe these two sections as permitting a tenant to seek a writ of reentry in one suit and bring a cause of action for actual damages, attorney's fees, and court costs in a second suit. Statements by the parties and the judge during the trial and the quoted statement in the judgment suggest that Gardner followed the same procedure: he sought a writ of reentry

in this case and has a suit for actual damages and attorney's fees pending in another case.[5]

The only relief Gardner sought in this case was a writ of reentry. Appellants assert that the trial court's judgment is void because it grants relief not requested in Gardner's pleadings, namely, the reservation in a separate suit of Gardner's damages and attorney's fees. Appellants rely on two cases. In *Ex parte Fleming*, 532 S.W.2d 122 (Tex.Civ. App.—Dallas 1975, orig. proceeding), the trial court's judgment exceeded the relief sought in the pleadings by ordering attorney's fees to be paid out of a trust fund. *Ex parte Fleming*, 532 S.W.2d at 123. In *Texaco, Inc. v. Wolfe*, 601 S.W.2d 737 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), the court held that the defendant could not be held liable as a partner when the plaintiff did not plead that theory of liability. *Texaco*, 601 S.W.2d at 741–42.

■ In this case, the judgment mentioned the existence of claims pending in a separate lawsuit. The judgment's mention of the existence of claims does not grant relief on those claims. Because Gardner did not plead for actual damages and attorney's fees in this case, the trial court could not, and did not, grant him relief on those claims. Accordingly, *Ex parte Fleming* and *Texaco* are not applicable to the case before us. Because section 92.009(j) permits Gardner to bring a separate lawsuit for actual damages and attorney's fees, we hold that the trial court did not err in stating that those claims were "reserved for determination in Cause No. cc–94–3114–e in the County Court at Law No. 5." We overrule appellants' seventeenth and eighteenth points of error.

■ Appellants also assert that the judgment grants relief on a claim not included in the pleadings because it contains an order granting Gardner's motion to quash a subpoena. A motion to quash a subpoena is a request for procedural relief within the prosecution of the case. It is not relief dependent upon or included in a cause of action or defense. The request for the quashing of a subpoena would not be included in pleadings, and an order quashing a subpoena need not be supported by the pleadings. *See* Tex. R.Civ.P. 45(b), 47 (contents of a pleading); *see also Jobe v. Lapidus*, 874 S.W.2d 764, 765–66 (Tex.App.—Dallas 1994, writ denied). Accordingly, the trial court's inclusion in the judgment of an order granting a motion to quash a subpoena did not render the judgment void. We overrule appellants' sixteenth point of error.

## RULE 84 SANCTIONS

■ Gardner has brought a crosspoint requesting that we award him damages pursuant to Texas Rule of Appellate Procedure 84 because appellants brought this appeal solely for delay and without sufficient cause. *See* Tex.R.App.P. 84. We cannot agree that the appeal lacked sufficient cause. The issue of what constitutes a "dwelling" under chapter 92 of the property code appears to be one of first impression in Texas. Because of the uniqueness of the issue, we cannot conclude that the appeal was brought without sufficient cause. The facts of the case do not suggest that it was brought solely for delay. *Cf. Tindle v. Jackson Nat'l Life Ins. Co.*, 837 S.W.2d 795, 802 (Tex.App.—Dallas 1992, no writ). Accordingly, we deny Gardner's request for rule 84 sanctions and overrule the crosspoint.

We affirm the trial court's judgment.

---

5. The record before us does not contain any pleadings or other documents from the suit for actual damages and attorney's fees.