Young 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00630-CV







Barry Young, Appellant



v.



Bailey Elliott Construction, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 94-08594, HONORABLE JOE B. DIBRELL, JUDGE PRESIDING







 This is an appeal by appellant Barry Young from a judgment of the trial court in favor of
appellee Bailey Elliott Construction, Inc. ("Bailey Elliott"). The trial court awarded $31,013.08 in actual
damages to Bailey Elliott as a result of the fraud practiced upon it by Young, stemming from Young's failure
to secure a performance and payment bond. The court further awarded $46,450 in exemplary damages
to Bailey Elliot, which included an award for appellate attorneys' fees. Young appeals this judgment in
seventeen points of error. We will affirm the judgment of the trial court.



BACKGROUND


 Because Young challenges the sufficiency of the evidence supporting the award of
exemplary damages, we set forth the facts in detail. See Transportation Ins. Co. v. Moriel, 879 S.W.2d
10, 31 (Tex. 1994). In December 1993, Bailey Elliott entered into a general construction contract with
MetalOptics, Inc. under which Bailey Elliott would act as a general contractor for the construction of a
54,000 square foot building that would serve as MetalOptics' offices and its air conditioning assembly and
manufacturing space. During the process of bidding the project out to various subcontractors and suppliers,
Bailey Elliott awarded the subcontract to erect the steel as well as some additional work to Custom
Construction, whose principal was Ken Urban but in which Barry Young was also involved. At some
point, Urban informed Bailey Elliott that he could not perform the subcontract.

 Mr. Elliott of Bailey Elliott then met with Barry Young and John Hanna and discussed
awarding this subcontract to Young Erectors, Inc., a corporation that Young and Hanna were attempting
to form. Elliott told them that Bailey Elliott would award the subcontract to erect the steel for the
MetalOptics building to Young Erectors provided it would secure a release from Ken Urban as well as
provide a performance and payment bond. (1) Young and Hanna told Elliott that Young Erectors would
agree to get a bond if Bailey Elliott entered into a contract with it.

 Elliott believed that Young fully intended that Young Erectors would get a bond. This was
the only conversation Elliott had with Young until after Young Erectors abandoned the MetalOptics project. 
After this meeting, Elliott did have two conversations with Hanna in which Hanna again indicated that
Young Erectors would agree to get a bond in the future.

 Elliott then prepared the contract and sent it to Young Erectors. Young signed the contract
on behalf of Young Erectors and returned it to Elliott, who then signed it in the name of Bailey Elliott on
March 31, 1994. Lynn Brantley, the corporate secretary of Young Erectors, was in charge of obtaining
the performance and payment bond. In attempting to do so, Brantley called several bonding companies,
including Time Insurance Agency ("Time"). Time required a financial statement from the individuals or
company seeking the bond, and, because Young Erectors had no financial statement, Young furnished his
personal financial statement to Time. Additionally, Time notified Brantley that, before agreeing to issue a
bond, it would require that Young sign a personal indemnity agreement. Meanwhile, in response to a phone
call concerning the application for the bond, Time told a representative of Bailey Elliott that Young Erectors
had been approved for the bond. Young, however, never signed a personal indemnity agreement, and a
bond was never issued. During this time, Lynn Brantley handled all contacts with Time concerning the
bond, and Young never personally spoke with anyone from Time.

 Under the subcontract, Bailey Elliott was to pay Young Erectors $34,286 upon satisfaction
of its contractual obligations. Young Erectors began work on the MetalOptics building on April 4, 1994,
but Young decided that Young Erectors should stop work on the project on April 14, 1994. According
to Hanna, Young Erectors had completed 90 percent of the steel erection and 30 percent of the
miscellaneous work under the subcontract. Elliott, however, testified that Young Erectors completed less
than 40 percent of the total work.

 From the date when the contract was executed until April 14, 1994, when work was
stopped on the project, Young Erectors incurred several debts that went unpaid. Aztec Crane Corporation
("Aztec") and Walter's Crane Service, Inc. ("Walter's") filed mechanic's liens against the MetalOptics
property; Aztec in the amount of $11,822.60 and Walter's in the amount of $3,857.50. Kennedy Welding
Supply and Equipment Corporation ("Kennedy") also filed a lien against the MetalOptics property in the
amount of $340.40, but that lien was released and Kennedy was dismissed as a party to this suit in
connection with a settlement before trial. Odyssey Management Company, Inc. ("Odyssey"), another
creditor of Young Erectors, served written claims totaling $18,417 upon Bailey Elliott but did not perfect
a mechanic's lien against the MetalOptics property. At Bailey Elliott's instruction, MetalOptics did not pay
these creditor's claims. The total amount of the liens exceeded the total amount of the Young Erectors
subcontract.

 Bailey Elliot's general construction contract with MetalOptics was a cost-plus contract with
a guaranteed maximum price. Bailey Elliott was to be reimbursed for all the costs in constructing the
building, so long as the costs plus Bailey Elliott's $80,000 fee did not exceed the guaranteed maximum price
of $1,919,000. The contract provided that, if there was any savings in the cost of constructing the building,
Bailey Elliott and MetalOptics would share in that savings with Bailey Elliott receiving one-third of the
savings and MetalOptics receiving two-thirds. The contract had a liquidated damages clause providing a
penalty of $750 per day for each day of construction on the project after 150 days. Similarly, the contract
had a $500 per day bonus clause for early completion. Accordingly, Bailey Elliott hired Jett Enterprises
("Jett") and Quality Steel Erectors ("Quality") to complete the work on the project, paying the two
companies a total of $46,779.84 to do so. Even after paying Jett and Quality, there remained a savings
of about $34,000 on the project.

 On July 14, 1994, Bailey Elliott filed suit against Young, Hanna, Young Erectors, Aztec,
Walter's, Kennedy, and Odyssey. Then, on August 2, 1994, Young filed a petition for bankruptcy on
behalf of Young Erectors.



DISCUSSION


 In points of error one through four, Young claims that the trial court abused its discretion
in admitting the live testimony of Lynn Brantley, David Ballew, and John Hanna as well as the deposition
testimony of Young because these witnesses were not properly identified by Bailey Elliott as possible fact
witnesses in response to Young's discovery requests. Young additionally contends that the trial court
abused its discretion in admitting the live testimony of Malcolm Robinson, attorney for Bailey Elliott,
because he was not properly identified as an expert witness and because Bailey Elliott failed to produce
any of the documents supporting its claims for legal fees.

 A party who fails to provide the name of a fact witness in response to a discovery request
may not offer the testimony of that witness unless the trial court finds good cause for the failure to identify
the witness. Tex. R. Civ. P. 215(5). The exclusion is automatic unless good cause is shown. Gee v.
Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 395 (Tex. 1989). The trial court has discretion to
determine whether the party calling the witness met its burden of showing good cause. Aluminum Co. of
Am. v. Bullock, 870 S.W.2d 2, 3-4 (Tex. 1994); Morris v. Short, 902 S.W.2d 566, 570 (Tex.
App.--Houston [1st Dist.] 1995, writ denied). In order to establish a clear abuse of discretion, the
complaining party must show that the trial court's action was arbitrary or unreasonable in light of all the
circumstances of the particular case. Morris, 902 S.W.2d at 570.

 In response to Young's interrogatory seeking the names, addresses, and phone numbers
of all persons with knowledge of the relevant facts in this case, Bailey Elliot named five individuals, including
Lynn Brantley, John Hanna, and David Ballew, but failed to provide addresses or phone numbers of those
witnesses. Brantley was a former employee of Young. Among other things, Young had in the past been
to her apartment, called her on the phone around July 8, 1994, and mailed her the minutes of the
corporation. Further, Brantley's deposition, in which she provided both her business and residential
addresses, was taken three months before the time Young filed its interrogatories. Similarly, Ballew's
deposition was also taken about three months before Young's interrogatories were filed. Ballew, as the
representative of Time Insurance Company, had been directly contacted in a letter from Young during
Young Erector's apparent attempt to obtain a bond. Hanna was Young's partner in starting Young Erectors
and had been a director in Young Erectors. Hanna was originally named a defendant, and Young called
Hanna after the lawsuit was filed to talk to him about it. Although Hanna's address was incorrect on the
live pleading, it had been correctly listed under the certificate of service on prior pleadings.

 Malcolm Robinson was identified as an expert witness on legal fees in response to Young's
interrogatories. Young was certainly aware that Robinson was Bailey Elliott's attorney and that his name,
address, and phone number were on every pleading filed in the case. Specifically, Young requested any
and all fee agreements between Bailey Elliott and its attorneys including "all invoices, memoranda, bills, or
other documents that describe . . . attorneys fees or litigation costs." Robinson noted at trial that there were
no written fee agreements. No exception to Rule 215(5) exists for an attorney who is to be called as an
expert witness to testify concerning reasonable and necessary attorneys' fees. Sharp v. Broadway Nat'l
Bank, 784 S.W.2d 669, 670-72 (Tex. 1990). If the attorney is not designated in response to a proper
interrogatory, he may not testify absent good cause shown. Id. at 671.

 Young himself was named by Bailey Elliott as having information pertaining to several of
Young's interrogatories, and Young's deposition was taken eight months prior to trial. Young was well
aware that he had personal knowledge of facts relevant to this suit. Only Young's deposition testimony was
admitted at trial; Young did not testify in person. Although neither Young's status as a party nor the fact
that he was deposed are independently sufficient to establish good cause, these factors may combine to
satisfy the good cause requirement. See Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 162 (Tex.
1992).

 In light of all the circumstances particular to this case, and keeping in mind that the purpose
of Rule 215(5) is to prevent trial by ambush and not to create a trap for the unwary, Morris, 902 S.W.2d
at 571, we hold that the trial court did not abuse its discretion in admitting the testimony of these witnesses. 
Discovery sanctions should be used as a shield to defend against trial by ambush and not as a sword to
destroy an opponent's case. Accordingly, points of error one through four are overruled.

 In points of error five through nine, Young contends that the trial court erred in denying
Young's motion for judgment at the close of Bailey Elliott's case because Bailey Elliott failed to offer any
evidence to support the essential elements of its alleged causes or, alternatively, failed to meet its burden
of persuasion. Young asserts that the trial court erred in rendering judgment against Young because there
is no evidence or insufficient evidence to support findings of actual fraud, that Young Erectors was the alter
ego of Young, and that Young individually contracted to provide a performance and payment bond on
behalf of Young Erectors. Young also claims that the trial court's finding of actual fraud by Young is
contrary to or unsupported by Bailey Elliott's pleadings in this case.

 In reviewing a no evidence point of error, we consider only the evidence and inferences
that support the challenged finding and disregard all evidence and inferences to the contrary. Best v. Ryan
Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). We uphold the trial court's findings if there is more
than a scintilla of evidence to support them. Stedman v. Georgetown Sav. & Loan Ass'n, 595 S.W.2d
486, 488 (Tex. 1979). In reviewing a factual sufficiency point of error, we consider all of the evidence and
will set aside a finding only if the evidence is so weak or the finding is so against the great weight and
preponderance of the evidence that it is wrong and manifestly unjust. Warehouse Partners v. Gardner,
910 S.W.2d 19, 23 (Tex. App.--Dallas 1995, no writ).

 Although normally insulating shareholders, officers, and directors from liability for corporate
obligations, the corporate fiction may be disregarded when the corporate form has been used as part of
a basically unfair device to achieve an inequitable result. Castleberry v. Branscum, 721 S.W.2d 270, 271
(Tex. 1986). In Castleberry, the supreme court noted that the purpose in disregarding the corporate
fiction "is to prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice, and
that purpose should not be thwarted. . . ." Id. at 273 (quoting Gentry v. Credit Plan Corp., 528 S.W.2d
571, 575 (Tex. 1975)). An attempt to pierce the corporate veil, in and of itself, is not a cause of action
but rather is a means of imposing liability on an underlying cause of action such as a tort or breach of
contract. Gallagher v. Bintliff, 740 S.W.2d 118, 119 (Tex. App.--Austin 1987, writ denied). 
Disregarding the corporate fiction is an equitable doctrine, and Texas takes an equitable fact-specific
approach. Castleberry, 721 S.W.2d at 273.

 Article 2.21 of the Texas Business Corporation Act states in pertinent part:



A. A holder of shares, an owner of any beneficial interest in shares, or a subscriber for
shares whose subscription has been accepted shall be under no obligation to the
corporation or to its obligees with respect to:


 . . .


 (2) any contractual obligation of the corporation on the basis that the holder,
owner, or subscriber is or was the alter ego of the corporation, or on the
basis of actual fraud or constructive fraud, a sham to perpetrate a fraud,
or other similar theory, unless the obligee demonstrates that the holder,
owner, or subscriber caused the corporation to be used for the purpose
of perpetrating and did perpetrate an actual fraud on the obligee primarily
for the direct personal benefit of the holder, owner, or subscribe... 



Tex. Bus. Corp. Act Ann. art. 2.21(A)(2) (West Supp. 1996). Bailey Elliott relied on theories of actual
fraud, alter ego and constructive fraud to allege that Young and Hanna were liable for Young Erector's
breach of contract. The trial court awarded damages to Bailey Elliott based on actual fraud committed by
Young.

 Specifically, Bailey Elliott asserts that, in order to obtain the subcontract on the MetalOptics
project, Young fraudulently represented that Young Erectors would secure a performance and payment
bond. Bailey Elliott contends that Young made this false representation, knowing that it was false and
intending that Bailey Elliott award the MetalOptics subcontract to Young Erectors because of it. Bailey
Elliott claims that it relied on Young's statement in awarding the subcontract to Young Erectors and that
it would not have done so but for Young's representation. Thus, when Young Erectors did not obtain the
bond and abandoned the subcontract, Bailey Elliott asserts that it suffered damages because it had to hire
other subcontractors to finish Young Erectors' work and because Young Erectors' creditors became lien
claimants.

 Young's promise to obtain the bond was a promise to do an act in the future, and such
promises may constitute actionable fraud when they are made with the intention, design and purpose of
deceiving and with no intention of performing the act. See Spoljaric v. Percival Tours, Inc., 708 S.W.2d
432, 434 (Tex. 1986). Specifically, Young contends that Bailey Elliott failed to establish that, at the time
the representation was made, Young or anyone else at Young Erectors did not intend for Young Erectors
to obtain the bond. Young also asserts that, even if Bailey Elliott could have established that Mr. Young
caused Young Erectors to be used for the purpose of perpetrating an actual fraud on Bailey Elliott, Bailey
Elliott failed to establish that Young did so for his own "direct personal benefit."

 A party's intent, although determined at the time the party made the representation, may
be inferred from the party's subsequent acts after making the representation. Spoljaric, 708 S.W.2d at
434. "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the
credibility of the witnesses and the weight to be given to their testimony." Id. Because intent to defraud
is not susceptible to direct proof, it must therefore be proven by circumstantial evidence. Id. at 435. "Slight
circumstantial evidence" of fraud, when considered with the breach of promise to perform, is adequate to
support a finding of fraudulent intent. Id.

 In this case, Young was a successful businessman, experienced in banking. He and Hanna
met with Elliott and promised that Young Erectors, a corporation they were forming, would get a bond if
it received the MetalOptics subcontract. Young Erectors was then incorporated on March 31, 1994 with
Young, Hanna, Brantley, and Young's wife Janet acting as the four directors. The subcontract was
executed and stated that "[S]ubcontractor is provide [sic] a P&P bond, and the premium is be [sic] has
been added to the subcontract amount in the amount of $836." Brantley, in her role as corporate secretary,
attempted to obtain the bond for Young Erectors from Time Insurance. Her efforts included sending
Young's personal financial statement to Time. Based on Young's financial statement, Time approved the
issuance of the bond, but would not issue one unless Young signed a personal indemnity agreement as was
customary in the bond business. Young failed to respond to Time's request for such an indemnity
agreement, and Time never issued a bond to Young Erectors.

 A bank account for Young Erectors was opened on April 4, 1994 and was overdrawn on
the same day. Then, on April 14, 1994, Young informed Hanna and Brantley that he would not invest any
more money in the company and thus caused Young Erectors to shut down. Young made this decision on
his own without consulting the other three directors. At the time of shut down, Young Erectors had
incurred debts to subcontractors and materialmen in the amount of $35,869.22, a total greater than the
amount of Young Erector's subcontract with Bailey Elliott. At some point around July 8, 1994, after the
corporation had shut down, Young attempted to get Brantley and Hanna to sign some incorporation papers
alleging that the papers would assist him in filing for bankruptcy. The minutes of the organizational meeting
and the bylaws were not prepared nor was stock issued until after July 8, 1994, and all of these documents
were backdated to April 15, 1994. Young Erectors filed for bankruptcy on August 2, 1994.

 Young's acts subsequent to making the representation and the other evidence in the record
provide more than "slight circumstantial evidence" of Young's fraudulent intent, and the trial court did not
err in finding all of the elements of fraud in this case. See T.O. Stanley Boot Co. v. Bank of El Paso, 847
S.W.2d 218, 222 (Tex. 1992). We find that there was sufficient evidence, factually and legally, upon
which the trial court could deny Young's motion for judgment at the close of Bailey Elliott's case and make
its finding of actual fraud thereby piercing the corporate veil to hold Young individually liable. Points of
error five through nine are overruled.

 We note that a trial court's findings of fact are reviewable for legal and factual sufficiency
of the evidence by the same standards that are applied in reviewing the legal and factual sufficiency of the
evidence supporting a jury's answer to a jury question. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994). A party may not challenge the trial court's conclusions of law for factual sufficiency, but may
challenge them as a matter of law. Gardner, 910 S.W.2d at 23. Further, additional findings of fact and
conclusions of law are not required to be made by the trial court where, as here, they are directly contrary
to, or inconsistent with, the original findings of fact and conclusions of law of the trial court. See Central
Power & Light Co. v. Bullock, 696 S.W.2d 30, 33 (Tex. App.--Austin 1984, no writ); Shelby Int'l Inc.
v. Wiener, 563 S.W.2d 324, 328 (Tex. Civ. App.--Houston [1st Dist.] 1978, no writ).

 Thus, in light of the evidence discussed above, we also overrule points of error fourteen
through seventeen in which Young challenges the legal and factual sufficiency of the evidence to support
the trial court's findings of fact and conclusions of law and in which he contends that the trial court erred
in failing to make the additional or amended findings of fact and conclusions of law as he requested.

 In points of error eleven through thirteen, Young contends that the trial court erred in
awarding exemplary damages, in awarding exemplary damages in an amount contingent upon unsuccessful
appeals, and in awarding an amount of exemplary damages in lieu of attorneys' fees incurred as a result of
fraud because there is no evidence or insufficient evidence to support such an award against Young. We
disagree.

 A party is entitled to exemplary damages based upon fraud. McLendon v. McLendon,
862 S.W.2d 662, 671 (Tex. App.--Dallas 1993, writ denied). Such damages are intended to punish the
defendant. Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 555 (Tex. 1985). Additionally,
exemplary damages may be awarded to reimburse the plaintiff for losses too remote to be considered as
elements of strict compensation, set an example for the good of the public, and compensate for
inconvenience and attorneys' fees. Hofer v. Lavender, 679 S.W.2d 470, 474 (Tex. 1984) (citing Allison
v. Simmons, 306 S.W.2d 206 (Tex. Civ. App. --Waco 1957, writ ref'd n.r.e.)).

 Exemplary damages must be reasonably proportioned to actual damages, but there is no
fixed formula for determining such reasonableness. Motsenbocker v. Potts, 863 S.W.2d 126, 137 (Tex.
App.--Dallas 1993, no writ) (citing Alamo Nat. Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981)). 
Factors to be considered in determining the amount of exemplary damages to award include:



(1) the nature of the wrong;


(2) the character of the defendant's conduct;


(3) the degree of the defendant's culpability;


(4) the situation and sensibility of the parties; and


(5) the extent to which the conduct offends the public's sense of justice and propriety.



Kraus, 616 S.W.2d at 910. We must evaluate the evidence and explain why it does or does not support
the award of exemplary damages. Moriel, 879 S.W.2d at 31.

 We have previously held that the trial court did not err in finding that Young committed
fraud against Bailey Elliott by representing that Young Erectors would get a performance and payment
bond if Bailey Elliott awarded it the MetalOptics' subcontract. The evidence as set forth above was also
sufficient, legally and factually, to support the trial court's award of exemplary damages. Thus, in light of
the Kraus factors and recognizing that attorneys' fees may be an element of exemplary damages, we hold
that the trial court did not err in awarding exemplary damages to Bailey Elliott. Points of error eleven
through thirteen are overruled.

 In point of error ten, Young asserts that the trial court erred in rendering judgment against
Young for actual damages because there is no evidence or, alternatively, insufficient evidence to support
a finding that Bailey Elliott, rather than MetalOptics, incurred actual damages in that amount. Young has
failed to support this point with citation to any authority and has therefore waived any error. See Tex. R.
App. P. 74(f) (appellate brief must include discussion of the authorities relied upon to maintain the point
at issue); Marsh v. Wallace, 924 S.W.2d 423, 425 (Tex. App.--Austin 1996, no writ). Even considering
the matter on the merits, however, we overrule the point of error.





CONCLUSION


 Because we have overruled all of appellant's points of error, we will affirm the judgment
of the trial court.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: September 25, 1996

Do Not Publish


 
1.   A performance and payment bond, as defined by Elliott, is "[b]asically an insurance
policy that would insure that a contractor would perform the work in a timely fashion and pay
all of his bills."



> A party is entitled to exemplary damages based upon fraud. McLendon v. McLendon,
862 S.W.2d 662, 671 (Tex. App.--Dallas 1993, writ denied). Such damages are intended to punish the
defendant. Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 555 (Tex. 1985). Additionally,
exemplary damages may be awarded to reimburse the plaintiff for losses too remote to be considered as
elements of strict compensation, set an example for the good of the public, and compensate for
inconvenience and attorneys' fees. Hofer v. Lavender, 679 S.W.2d 470, 474 (Tex. 1984) (citing Allison
v. Simmons, 306 S.W.2d 206 (Tex. Civ. App. --Waco 1957, writ ref'd n.r.e.)).

 Exemplary damages must be reasonably proportioned to actual damages, but there is no
fixed formula for determining such reasonableness. Motsenbocker v. Potts, 863 S.W.2d 126, 137 (Tex.
App.--Dallas 1993, no writ) (citing Alamo Nat. Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981)). 
Factors to be considered in determining the amount of exemplary damages to award include:



(1) the nature of the wrong;


(2) the character of the defendant's conduct;


(3) the degree of the defendant's culpability;


(4) the situation and sensibility of the parties; and


(5) the extent to which the conduct offends the public's sense of justice and propriety.



Kraus, 616 S.W.2d at 910. We must evaluate the evidence and explain why it does or does not support
the award of exemplary damages. Moriel, 879 S.W.2d at 31.

 We have previously held that the trial court did not err in finding that Young committed
fraud against Bailey Elliott by representing that Young Erectors would get a performance and payment
bond if Bailey Elliott awarded it the MetalOptics' subcontract. The evidence as set forth above was also
sufficient, legally and factually, to support the trial court's award of exemplary damages. Thus, in light of
the Kraus factors and recognizing that attorneys' fees may be an element of exemplary damages, we hold
that the trial court did not err in awarding exemplary damages to Bailey Elliott. Points of error eleven
through thirteen are overruled.

 In point of error ten, Young asserts that the trial court erred in rendering judgment against
Young for actual damages because there is no evidence or, alternatively, insufficient evidence to support
a finding that Bailey Elliott, rather than MetalOptics, incurred actual damages in that amount. Young has
failed to support this point with citation to any authority and has therefore waived any error. See Tex. R.
App. P. 74(f) (appellate brief must include discussion of the authorities relied upon to maintain the point
at issue); Marsh v. Wallace, 924 S.W.2d 423, 425 (Tex. App.--Austin 1996, no writ). Even considering
the matter on the merits, however, we overrule the point of error.